218 PGS
DT

201510474

Texas

REFERENCE IS MADE TO THE INTERCREDITOR AGREEMENT, DATED AS OF APRIL 8, 2015, AMONG WELLS FARGO BANK, NATIONAL ASSOCIATION AS AGENT FOR THE PRIORITY LIEN SECURED PARTIES REFERRED TO THEREIN; U.S. BANK NATIONAL ASSOCIATION, AS SECOND LIEN COLLATERAL TRUSTEE (AS DEFINED THEREIN); BREITBURN ENERGY PARTNERS LP, BREITBURN FINANCE CORPORATION, BREITBURN OPERATING LP, AND THE OTHER SUBSIDIARIES OF BREITBURN ENERGY PARTNERS LP NAMED THEREIN FROM TIME TO TIME (AS IT MAY BE AMENDED, RESTATED, SUPPLEMENTED OR OTHERWISE MODIFIED FROM TIME TO TIME, THE "*INTERCREDITOR AGREEMENT*"). EACH PERSON THAT IS SECURED HEREUNDER, BY ACCEPTING THE BENEFITS OF THE SECURITY PROVIDED HEREBY, (I) CONSENTS (OR IS DEEMED TO CONSENT) TO THE SUBORDINATION OF LIENS PROVIDED FOR IN THE INTERCREDITOR AGREEMENT, (II) AGREES (OR IS DEEMED TO AGREE) THAT IT WILL BE BOUND BY, AND WILL TAKE NO ACTIONS CONTRARY TO, THE PROVISIONS OF THE INTERCREDITOR AGREEMENT, (III) AUTHORIZES (OR IS DEEMED TO AUTHORIZE) THE SECOND LIEN COLLATERAL TRUSTEE ON BEHALF OF SUCH PERSON TO ENTER INTO, AND PERFORM UNDER, THE INTERCREDITOR AGREEMENT AND (IV) ACKNOWLEDGES (OR IS DEEMED TO ACKNOWLEDGE) THAT A COPY OF THE INTERCREDITOR AGREEMENT WAS DELIVERED, OR MADE AVAILABLE, TO SUCH PERSON.

NOTWITHSTANDING ANY OTHER PROVISION CONTAINED HEREIN, THIS MORTGAGE, THE LIENS CREATED HEREBY AND THE RIGHTS, REMEDIES, DUTIES AND OBLIGATIONS PROVIDED FOR HEREIN ARE SUBJECT IN ALL RESPECTS TO THE PROVISIONS OF THE INTERCREDITOR AGREEMENT. IN THE EVENT OF ANY CONFLICT OR INCONSISTENCY BETWEEN THE PROVISIONS OF THIS MORTGAGE AND THE INTERCREDITOR AGREEMENT, THE PROVISIONS OF THE INTERCREDITOR AGREEMENT SHALL CONTROL.

---

### DEED OF TRUST, MORTGAGE, ASSIGNMENT OF PRODUCTION, FIXTURE FILING, SECURITY AGREEMENT AND FINANCING STATEMENT

Dated effective as of

June 5, 2015

FROM

**BREITBURN OPERATING LP**

AS MORTGAGOR

**QRE OPERATING, LLC**

AS MORTGAGOR

**TRANSPETCO PIPELINE COMPANY, L.P.**

AS MORTGAGOR

TO

LELAND HANSEN, TRUSTEE

FOR THE BENEFIT OF

U.S. BANK NATIONAL ASSOCIATION, COLLATERAL AGENT, AS BENEFICIARY

Page 1 _____

AND TO

U.S. BANK NATIONAL ASSOCIATION, COLLATERAL AGENT,
AS MORTGAGEE

A CARBON, PHOTOGRAPHIC, FACSIMILE, OR OTHER REPRODUCTION OF THIS INSTRUMENT IS SUFFICIENT AS A FINANCING STATEMENT.

THIS INSTRUMENT CONTAINS AFTER-ACQUIRED PROPERTY PROVISIONS, SECURES PAYMENT OF FUTURE ADVANCES, AND COVERS PROCEEDS OF COLLATERAL.

MORTGAGOR HAS AN INTEREST OF RECORD IN THE REAL ESTATE WHICH IS DESCRIBED IN EXHIBIT A HERETO. SOME OF THE PERSONAL PROPERTY CONSTITUTING A PORTION OF THE COLLATERAL IS OR IS TO BECOME FIXTURES RELATED TO THE REAL ESTATE.

THIS INSTRUMENT IS TO BE FILED FOR RECORD, AMONG OTHER PLACES, IN THE REAL ESTATE OR COMPARABLE RECORDS OF THE COUNTIES AND/OR PARISHES REFERENCED IN EXHIBIT A HERETO.

A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW MORTGAGEE TO TAKE THE MORTGAGED PROPERTIES AND SELL THEM WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE MORTGAGOR UNDER THIS MORTGAGE.

For purposes of filing this Mortgage as a financing statement, the mailing address of Mortgagor is at 515 South Flower St., Suite 4800, Los Angeles, CA 90071; the mailing address of Mortgagee is at 950 17th Street - 12th Floor, Denver, CO 80202.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This instrument contains after-acquired property provisions and covers future advances and proceeds to the fullest extent allowed by applicable law.

ATTENTION RECORDING OFFICER: This instrument is a mortgage of both real and personal property and is, among other things, a Security Agreement and Financing Statement under the Uniform Commercial Code. This instrument creates a lien on rights in or relating to lands and Mortgaged Properties of Mortgagor, including, without limitation, such Mortgaged Properties which are described in Exhibit A hereto or in instruments and documents described in such Exhibit A hereto.

THIS MORTGAGE IS FILED AS AND SHALL CONSTITUTE A FIXTURE FILING IN ACCORDANCE WITH THE PROVISIONS OF SECTION 9.502(c) OF THE UNIFORM COMMERCIAL CODE OF TEXAS.

THIS INSTRUMENT WAS PREPARED BY AND RECORDED DOCUMENT SHOULD BE RETURNED TO:

> Kirkland & Ellis LLP
> 600 Travis Street, Suite 3300
> Houston, TX 77002
> Attn: Chad Nichols



Page 3

**DEED OF TRUST, MORTGAGE, ASSIGNMENT OF PRODUCTION, FIXTURE FILING,
SECURITY AGREEMENT AND FINANCING STATEMENT**

THIS DEED OF TRUST, MORTGAGE, ASSIGNMENT OF PRODUCTION, FIXTURE FILING, SECURITY AGREEMENT AND FINANCING STATEMENT (herein called the "*Mortgage*"), is dated effective June 5, 2015 (the "*Effective Date*"), from BREITBURN OPERATING LP, a Delaware limited partnership (the "*Company*"), QRE OPERATING, LLC ("*QRE*") and TRANSPETCO PIPELINE COMPANY, L.P., a Delaware limited partnership ("*Transpetco*" and together with the Company and QRE herein called "*Mortgagor*"), each with an address at 515 South Flower St., Suite 4800, Los Angeles, CA 90071, to LELAND HANSEN, Trustee (together with any successors and substitutes hereunder, "*Trustee*") whose address is 950 17th Street - 12th Floor, Denver, CO 80202, Attention: Corporate Trust Administration, for the benefit of U.S. BANK NATIONAL ASSOCIATION, a national banking association, as Collateral Agent under and as defined in the Indenture described below (in such capacity, together with its successors and assigns in such capacity, the "*Collateral Agent*"; the Collateral Agent, together with its successors and assigns in such capacity, being sometimes herein referred to as the "*Mortgagee*"), whose address is 950 17th Street - 12th Floor, Denver, CO 80202, Attention: Corporate Trust Administration, as Collateral Agent for the benefit of the Secured Parties (as defined in the Security Agreement as defined in Indenture defined below), including, without limitation, the holders of notes (the "*Holders*") from time to time party to that certain Indenture, dated as of April 8, 2015, by and among the Company, Breitburn Energy Partners LP, a Delaware limited partnership ("*Parent*"), Breitburn Finance Corporation, a Delaware corporation ("*Finance Corp.*" and, together with the Company and Parent, the "*Issuers*") and Mortgagee (such agreement as may from time to time be amended, restated, amended and restated, supplemented or otherwise modified, the "*Indenture*"; all capitalized terms not defined herein shall have the meaning assigned to such term in the Indenture).

**WITNESSETH:**

Mortgagor, for a sufficient consideration received, does hereby MORTGAGE, GRANT, BARGAIN, SELL, ASSIGN, TRANSFER and CONVEY WITH POWER OF SALE unto Trustee and to Trustee's successors in this trust, for the use and benefit of Mortgagee, for the benefit of the Secured Parties, with respect to the following described properties which are located in (or relate to properties located in) the State of Texas the following described real and personal property, rights, titles, interests and estates but excluding the Excluded Assets as hereinafter defined (herein collectively called the "*Mortgaged Properties*"),

(a)    All rights, titles, interests and estates now owned or hereafter acquired by Mortgagor in and to the oil and gas and/or the oil, gas and mineral leases (herein sometimes collectively called the "*Leases*"), operating rights, forced pooling orders and farmout agreements and other contractual or other rights relating to oil, gas and mineral rights described on *Exhibit A* which is attached hereto and made a part hereof for all purposes, or which Leases are otherwise mentioned or referred to herein and specifically, but without limitation, Mortgagor's undivided interests in the Leases as specified on *Exhibit A*, even though Mortgagor's interests therein are incorrectly described or a description of a part or all of such Leases or Mortgagor's interests therein be omitted;

(b)    All rights, titles, interests and estates now owned or hereafter acquired by Mortgagor in and to (i) the properties now or hereafter pooled or unitized with the Leases; (ii) all presently existing or future unitization, communitization, pooling agreements and declarations of pooled units and the units created thereby (including, without limitation, all units created under orders, regulations, rules or other official acts of any Federal, State or other governmental body or agency having jurisdiction) which may affect all or any portion of the Leases including, without limitation, those units which may be described or referred to in *Exhibit A*; and (iii) all operating agreements, contracts and other agreements described or

*QRE Operating LLC*
*Page 4*

referred to in this instrument which relate to any of the Leases or interests in the Leases described or referred to herein or in *Exhibit A* or to the production, sale, purchase, exchange or processing of the "Hydrocarbons" (hereinafter defined) from or attributable to such Leases or interests;

(c)     All rights, titles, interests and estates now owned or hereafter acquired by Mortgagor in and to all oil, gas, casinghead gas, condensate, distillate, liquid hydrocarbons, gaseous hydrocarbons, as-extracted collateral (as such term is used in the Uniform Commercial Code) and all products refined therefrom and all other minerals of whatever kind or character and in whatever form or phase (herein collectively called the "*Hydrocarbons*") in and under and which may be produced and saved from or attributable to the Leases, the lands covered thereby and Mortgagor's interests therein, including all oil in tanks and all rents, issues, profits, proceeds, products, revenues and other income from or attributable to the Leases, the lands covered thereby and Mortgagor's interests therein which are subjected or required to be subjected to the liens and security interests of this Mortgage;

(d)     All now owned or hereafter acquired tenements, hereditaments, appurtenances and properties in anywise appertaining, belonging, affixed or incidental to the Leases, properties, rights, titles, interests and estates described or referred to in subparagraphs (a) and (b) and (c) above, including, without limitation, any and all property, real or personal, now owned or hereafter acquired and situated upon, used, held for use, or useful in connection with the operating, working or development of any of such Leases or properties (excluding drilling rigs, automotive equipment or other personal property which may be on such premises for the purpose of drilling a well or for other similar temporary uses, all proprietary intellectual property rights, patents, trade secrets, computer software, mechanical engineering data, research and files relating to horizontal drilling guidance systems and geological and geophysical maps, licenses and data in which Mortgagor cannot grant a security interest without violating third party agreements) and including any and all oil wells, gas wells, injection wells, disposal wells or other wells including without limitation those described on *Exhibit A* hereto, buildings, structures, field separators, liquid extraction plants, plant compressors, pumps, pumping units, field gathering systems, tanks and tank batteries, flow lines, disposal lines, fixtures, valves, fittings, machinery and parts, engines, boilers, meters, apparatus, equipment, appliances, tools, implements, cables, wires, towers, casing, tubing and rods, surface leases, rights-of-way, easements and servitudes together with all additions, substitutions, replacements, accessions and attachments to any and all of the foregoing properties;

(e)     The easements, rights-of-way, servitudes, real property, and permits, licenses, orders, certificates, and related instruments (collectively herein referred to as the "*Easements*") described in *Exhibit A* or described in any instrument or document described in *Exhibit A*, and any strips and gores within or adjoining any real property included in or covered by the Easements, all rights of ingress and egress to and from such real property, all easements, servitudes, rights-of-way, surface leases, fee tracts and other surface rights affecting said Easements, and all rights appertaining to the use and enjoyment of said Easements, rights, estates, titles, claims, and interests, including, without limitation, lateral support, drainage, mineral, water, oil and gas rights (the Easements and all of the property and other rights, privileges, interests, titles, estates, and claims appurtenant thereto are hereinafter collectively called the "*Gathering System Premises*");

(f)     All gathering systems and/or pipeline systems, and all materials, equipment, and other property now or hereafter located on the Gathering System Premises or used or held for use, regardless of where the same are located, in connection with, or otherwise related to such gathering systems and/or pipeline systems and all equipment, including, but not limited to, all fittings, furnishings, appliances, apparatus, machinery, treatment, storage, transportation, exchange units, gas, liquid product and other storage tanks, liquid product truck loading terminals, and other assets now or hereafter located on or in (or, whether or not located thereon or therein, used or held for use in connection with) the Premises or such gathering systems or pipeline systems (that portion of the Mortgaged Properties described in this *paragraph (f)* is herein collectively called the "*Gathering Systems*");

*Page 5*

(g)     All materials, goods, surface or subsurface machinery, equipment, and other property now or hereafter located on the Gathering System Premises, and all other surface or subsurface machinery and equipment, line pipe and pipe connections, fittings, flanges, welds or interconnects, valves, control equipment, cathodic or electrical protection units, by-passes, regulators, drips, meters and metering stations, compression equipment, pumphouses and pumping stations, treating equipment, dehydration equipment, separation equipment, processing equipment, telephone, telegraph and other communication systems, office equipment and furniture, files and records, computer equipment and software, storage sheds, vehicles, loading docks, loading racks, towers, process tanks, storage tanks and other storage facilities and shipping facilities, gas and electric fixtures, radiators, heaters, engines and machinery, boilers, elevators and motors, pipes, faucets and other air conditioning, plumbing, and heating fixtures, refrigerators and appurtenances which relate to Mortgagor's use of the Gathering Systems (collectively, the "*Gathering System Equipment*"), and all building materials and supplies now or hereafter delivered to the Gathering System Premises and intended to be installed thereon; all other personal property of whatever kind and nature at present contained in or hereafter placed on the Gathering System Premises in which Mortgagor has a possessory or title interest; and all renewals or replacements thereof or articles in substitution thereof; and all proceeds and profits thereof, all of which shall be deemed to be a portion of the security for the Obligations (as hereafter defined).  If the lien of this Mortgage on any fixtures or personal property is subject to a lease agreement, conditional sales agreement or chattel mortgage covering such property, then all the right, title and interest of Mortgagor in and to any and all deposits made thereon or therefor are hereby assigned to Mortgagee, its successors and assigns, for the benefit of the Secured Parties, together with the benefit of any payments now or hereafter made thereon. Mortgagor also transfers, sets over and assigns to Mortgagee, its successors and assigns, for the benefit of the Secured Parties, all leases and use agreements covering machinery, Equipment and other personal property of Mortgagor related to the Gathering System Premises or the conduct of its business thereon, under which Mortgagor is the lessee of, or entitled to use, such items;

(h)     All inventory and all materials used or consumed in the processing of Hydrocarbons, and all products thereof, now or hereafter located in or on, or stored in or on, transported through or otherwise related to the lands covered by the Leases and the Gathering System Premises (herein collectively, the "*Premises*"), including all inventory (as such term is used in the Uniform Commercial Code) and such other property held by Mortgagor for sale or lease (or in the possession of other persons while on lease or consignment) or furnished or to be furnished under any service contract and all raw materials, work in process and materials and supplies used or consumed in Mortgagor's business relating to the Premises, and returned or repossessed goods, together with any bill of lading, dock warrant, dock receipt, warehouse receipt or order for the delivery of such goods of Mortgagor related to the Leases and Gathering System, and any other document which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods that it covers (the Mortgaged Properties described in this *paragraph (h)* are hereinafter collectively referred to as the "*Inventory*"), and all proceeds thereof and all accounts, contract rights and general intangibles under which such proceeds may arise, and together with all liens and security interests securing payment of the proceeds of the Inventory, including, but not limited to, those liens and security interests provided for under statutes enacted in the jurisdictions in which the Mortgaged Properties are located;

(i)     All presently existing and hereafter created Hydrocarbon purchase agreements, Hydrocarbon sales agreements, supply agreements, raw material purchase agreements, product purchase agreements, product sales agreements, processing agreements, exchange agreements, gathering agreements, transportation agreements and other contracts and agreements which cover, affect, or otherwise relate to the production, extraction, transportation and/or processing of Hydrocarbons through or in the Premises or any other part of the Mortgaged Properties, and all other contracts and agreements (including, without limitation, equipment leases, maintenance agreements, electrical supply contracts,

hedge or swap agreements, cap, floor, collar, exchange, forward or other hedge or protection agreements or transactions relating to crude oil, natural gas or other hydrocarbons, or any option with respect to any such agreement or transaction, and other contracts and agreements) which cover, affect or otherwise relate to the Premises, or any part thereof, together with any and all amendments, modifications, renewals or extensions (now or hereafter existing) to any of the foregoing (the Mortgaged Properties described in this *paragraph (i)* are herein collectively called the "*Contracts*");

(j)    All Accounts, including but not limited to, (i) all of Mortgagor's rights to receive payment, whether or not earned by Mortgagor's performance and however acquired or evidenced, which arise out of or in connection with (A) Mortgagor's sale of Hydrocarbons, (B) Mortgagor's sale, assignment, lease, hiring out or allowance of use of, consignment, licensing or other voluntary disposition, whether permanent or temporary, of Inventory or other goods or property related to the Premises and/or the conduct of Mortgagor's business thereon (including, without limitation, all payments received in lieu of payment for Inventory regardless of whether such payments accrued, and/or the events which gave rise to such payments occurred, on or before or after the date hereof, including, without limitation, "*take or pay*" or "*minimum bill*" payments and similar payments, payments received in settlement of or pursuant to a judgment rendered with respect to take or pay or minimum bill or similar obligations or other obligations under a sales contract, and payments received in buyout or other settlement of a contract covered by this Mortgage), (C) rendering of services related to the Gathering Systems and/or Premises and/or the conduct of Mortgagor's business thereon or (D) any loan, advance, purchase of notes or other extension of credit made by Mortgagor; (ii) any and all rights and interests Mortgagor may have in connection with any of the transactions described in the preceding clause (i) and relating to the Premises, whether now existing or hereafter acquired, (A) to demand and receive payment or other performance from any guarantor, surety, accommodation party or other person indirectly or secondarily obligated to Mortgagor in respect of the Leases, Hydrocarbons, Gathering Systems and/or the Premises and/or the conduct of Mortgagor's business thereon, (B) arising out of the enforcement of any of Mortgagor's rights to payment or performance by means of judicial or administrative proceedings, including, without limitation, any rights to receive payment under or in connection with any settlement of such proceedings, any judgment or any administrative order or decision arising out of actions related to the Leases, Hydrocarbons, Gathering Systems and/or the Premises and/or the conduct of Mortgagor's business thereon, (C) in and to the goods or other property related to the Premises and/or the conduct of Mortgagor's business thereon that is the subject of any such transaction, including, without limitation, (1) in the case of goods, an unpaid seller's or lessor's rights of rescission, replevin or to stop such goods in transit, and all rights to such goods on return or repossession, and (2) in the case of other property, rights of an unpaid seller, assignor or licensor to rescind or cancel the applicable agreement and demand the return of such property or, if such property is intangible, of any writing or other tangible evidence of its existence and/or disposition, and (D) to proceed against any collateral security related to the Premises provided by any obligor and to realize any proceeds thereof; and (iii) all contracts and other agreements and writings, all accounts, chattel paper, documents, general intangibles and instruments, and all other items of property now or hereafter owned by Mortgagor or in which Mortgagor now has or hereafter acquires any rights or interests, whether tangible or intangible and related to the Premises that in any way constitute, embody or evidence any payment rights described in *clause (i) of this paragraph (j)* or any of Mortgagor's other rights and interests described in *clause (ii)* of this *paragraph (j)* (the Mortgaged Properties described in this *paragraph (j)* are hereinafter collectively referred to as the "*Accounts Receivable*");

(k)    All contracts, agreements, leases, permits, orders, franchises, servitudes, certificates, privileges, rights, technology, licenses and general intangibles (including, without limitation, all trademarks, trade names, and symbols) which are now or hereafter used, or held for use, in connection with or otherwise relate to the Premises, the Gathering Systems, the Gathering System Equipment and/or the other items described in *paragraph (g)*, the Inventory, the Contracts, and/or the Accounts Receivable

the Premises, the Gathering Systems, the Gathering System Equipment and the other items described in *paragraph (g)*, the Inventory, the Contracts, and the Accounts Receivable are hereinafter collectively referred to as the "*Property*") or the conduct of Mortgagor's business on the Leases and/or Gathering System Premises whether now or hereafter created, acquired, or entered into and all right, title and interest of Mortgagor thereunder, including, without limitation, rights, incomes, profits, revenues, royalties, accounts, contract rights and general intangibles under any and all of the foregoing;

(l)     Any and all data, books and records related to the Premises and Mortgagor's operations thereon, including but not limited to, accounting records, files, computer software, employee records, engineering drawings or plans, surveys, site assessments, environmental reports, customer lists, production records, laboratory and testing records, sales and administrative records, and any other material or information relating to the ownership, maintenance, or operation of the Property (the "*Books and Records*");

(m)     All unearned premiums, accrued, accruing or to accrue under insurance policies now or hereafter obtained by Mortgagor for the Property or the conduct of Mortgagor's business on the Premises and all judgments, awards of damages and settlements hereafter made as a result of or in lieu of any taking of the Premises or any part thereof or any interest therein under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Leases and/or Gathering System Premises or any part thereof or interest therein, including any award for change of grade of streets;

(n)     All proceeds of the conversion, voluntary or involuntary, of the Property or any part thereof into cash or liquidated claims, including, without limitation, proceeds of hazard and title insurance, subject to the terms and conditions of this Mortgage;

(o)     All options, extensions, improvements, betterments, renewals, substitutions and replacements of, and all additions and appurtenances to, the Property or any part thereof, hereafter acquired by, or released to, Mortgagor, or constructed, assembled or placed by Mortgagor on the Premises, and all conversions of the security constituted thereby (Mortgagor hereby acknowledging and agreeing that immediately upon such acquisition, release, construction, assembling, placement or conversion, as the case may be, and in each such case, without any further mortgage, conveyance, assignment or other act by Mortgagor, the same shall become subject to the lien of this Mortgage as fully and completely, and with the same effect, as though now owned by Mortgagor and specifically described herein);

(p)     Any property that may from time to time hereafter by delivery or by writing of any kind be subjected to the lien or security interests hereof by Mortgagor or by anyone on Mortgagor's behalf; and the Trustee or Mortgagee is hereby authorized to receive the same at any time as additional security hereunder; and

(q)     All of the rights, titles and interests of every nature whatsoever now owned or hereafter acquired by Mortgagor in and to the Leases, Easements, properties, rights, titles, interests and estates and every part and parcel thereof, including, without limitation, said Leases, Easements, properties, rights, titles, interests and estates as the same may be enlarged by the discharge of any payments out of production or by the removal of any charges or "Permitted Encumbrances" (hereinafter defined) to which any of said Leases, Easements, properties, rights, titles, interests or estates are subject, or otherwise; together with any and all renewals, extensions and modifications of any of said Leases, Easements, properties, rights, titles, interests or estates; and all contracts and agreements supplemental to or amendatory of or in substitution for the Leases, Easements, the contracts and agreements described or mentioned above and any and all additional interests of any kind hereafter acquired by Mortgagor in and to said Leases, Easements properties, rights, titles, interests or estates; and

(r)     All accounts, contract rights, equipment, fixtures, inventory, general intangibles and any and all other personal/movable property of any kind or character constituting a part of, relating to or

Page 8

arising out of those portions of the Mortgaged Properties which are described in ***paragraphs (a)*** through ***(q)*** above and all proceeds and products of all such portions of the Mortgaged Properties.

(s)    Proceeds and products of the foregoing, together with any and all corrections or amendments to, or renewals, extensions or ratifications of, any of the same, or of any instrument relating thereto; and

(t)    All other things of value and incident thereto which Mortgagor might at any time have or be entitled to

in trust, however, with a power of sale, for the proposes, uses and benefits hereinafter set out.

***Excluded Assets*** means: (i) the Excluded Assets and Excluded Equity Interests as each term is defined in the Security Agreements and (ii) any Building (as defined in the applicable Flood Insurance Regulation) or Manufactured (Mobile) Home (as defined in the applicable Flood Insurance Regulation).  As used herein, "Flood Insurance Regulations" shall mean (a) the National Flood Insurance Act of 1968 as now or hereafter in effect or any successor statute thereto, (b) the Flood Disaster Protection Act of 1973 as now or hereafter in effect or any successor statute thereto, (c) the National Flood Insurance Reform Act of 1994 (amending 42 USC 4001, et seq.), as the same may be amended or recodified from time to time, and (d) the Flood Insurance Reform Act of 2004 and any regulations promulgated thereunder.

To the extent this Mortgage may have ever caused any such Buildings or Manufactured (Mobile) Homes to be included in the Mortgaged Properties, such property is hereby excluded from the lien created by this Mortgage.

TO HAVE AND TO HOLD the Mortgaged Properties unto Trustee, and Trustee's successors or substitutes, in trust, however upon the terms, provisions and conditions herein set forth.

## ARTICLE I.
## OBLIGATIONS SECURED

1.1    The foregoing conveyance is made in trust to secure and enforce payment and performance of each of the following (herein collectively called the "***Obligations***"):

(a)    Any and all present or future indebtedness, obligations (including, without limitation, the Obligations (as defined in the Indenture)) and liabilities of Mortgagor, all other Guarantors (hereinafter defined) and all Issuers (together, the "***Note Parties***") incurred under, arising out of or in connection with the 9.25% Senior Secured Notes due 2020 issued by the Issuers pursuant to the Indenture (the "***Notes***" or sometimes collectively referred to as the "***Note***"), and bearing interest at the fixed or variable rates therein provided, said principal and interest being payable as therein provided, with a final maturity date of May 18, 2020, if not sooner paid, as same may be renewed and extended, in whole or in part, including all amendments, assignments, modifications (including increases, if any) and rearrangements thereof, the Indenture and the Notes containing usual provisions for increased interest after maturity or default, and acceleration and attorneys' fees in the event of a default under the terms thereof;

(b)    any sums which may be advanced or paid by Mortgagee or the Holders under the terms hereof or of the Indenture or other Note Documents on account of the failure of Mortgagor to comply with the covenants of Mortgagor contained herein, or the failure of Mortgagor or any other Note Party to comply with the covenants of Mortgagor or any other Note Party contained in the Indenture or any other Note Documents; and all other indebtedness of the Mortgagor arising

*Page 9*

pursuant to the provisions of this Mortgage, including penalties, indemnities, legal and other fees, charges and expenses, and amounts advanced by and expenses incurred in order to preserve any collateral or security interest, whether due after acceleration or otherwise;

(c)    any and all present or future indebtedness, obligations and liabilities of the Guarantors incurred under, arising out of or in connection with the guarantees set forth in Article 10 of the Indenture or supplements thereto after the date hereof, guaranteeing the Issuers' obligations under the Indenture, as same may be renewed and extended, in whole or in part, including all amendments, assignments, modifications (including increases, if any) and rearrangements thereof;

(d)    all advances, debts, liabilities, obligations, covenants and duties owing or to be owing, whether direct or indirect (including those acquired by assignment), absolute or contingent, due or to become due, now existing or hereafter arising or incurred, by Mortgagor or any other Note Party: (i) to any Holder, Mortgagee, Indemnitee or other Indemnified Party (as hereinafter defined) under any Note Document; (ii) all renewals, extensions and rearrangements of the foregoing; and (iii) all interest (including, without limitation, interest accruing at any post-default rate and interest accruing after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding) in respect of all of the obligations described in this Section 1.1 and all costs of collection and attorneys' fees, all as provided herein and in the other Note Documents, and

(e)    any and all other present or future indebtedness, obligations and liabilities of Mortgagor or any other Note Party incurred under, arising out of or in connection with all other debts, obligations and liabilities of every nature whatsoever presently or at any time hereafter owing under the Notes, the Indenture, the other Note Documents, or hereunder or under any other indebtedness by Mortgagor pursuant to the Note Documents, whether direct or indirect, primary or secondary, fixed or contingent, arising from guaranty, endorsement, suretyship, assignment or otherwise, it being expressly contemplated that Mortgagee, any Holder or Holders may from time to time hereafter make additional advances to or on behalf of Mortgagor and that Mortgagor may from time to time hereafter otherwise become further obligated or indebted to Mortgagee, and Holder or Holders.

1.2    Mortgagor specifically waives presentment, protest, notices of dishonor, intention to accelerate and acceleration.

## ARTICLE II.
## REPRESENTATIONS, WARRANTIES AND COVENANTS

2.1    Mortgagor represents and warrants to, and covenants and agrees with Mortgagee and the Holders or any other holder or holders from time to time of the Obligations or any part thereof or any interest therein (collectively, the "*Holder*"), and with each of them, so long as the Obligations or any part thereof (other than Obligations in respect of indemnification, expense reimbursement, tax gross-up or yield protection for which no claim has been made) remains unpaid, as follows:

(a)    To the extent failure to do so would have a material adverse effect on the value of the Mortgaged Properties, Mortgagor, or Mortgagor's predecessor or predecessors in title to each of the Mortgaged Properties, have properly and timely performed whatever may be required by

the provisions of each of the Leases (or by any contract, assignment or conveyance under which Mortgagor holds title to any of the Mortgaged Properties) to perpetuate the Leases and to perfect or maintain Mortgagor's title. To the extent failure to do so would have a material adverse effect on the value of the Mortgaged Properties, Mortgagor shall pay and discharge or cause to be paid or discharged all lease bonuses, pooling bonuses, rentals, delay rentals, surface lease payments or rentals, royalties, production payments, and indebtedness required to be paid by Mortgagor, and perform or cause to be performed, each and every act, matter, or thing required of Mortgagor by each and all of the Leases, forced pooling orders, assignments, deeds, subleases, contracts and agreements in any way relating to the Mortgaged Properties and do all other things necessary of Mortgagor to keep unimpaired the rights of Mortgagor thereunder and to prevent the forfeiture thereof or default thereunder.

(b)     Mortgagor has good and defensible title to and is possessed of the Mortgaged Properties, free of any and all adverse claims, rights of others, liens, encumbrances, security interests, contracts, agreements, preferential purchase rights or other restrictions or limitations of any nature or kind except those which are Permitted Encumbrances as defined in *Exhibit A*. Mortgagor hereby covenants that Mortgagor will warrant and forever defend the same against the claims of all persons whomsoever lawfully claiming or to claim the same or any part thereof, subject to the Permitted Encumbrances. Mortgagor owns an undivided working interest (hereinafter defined) and a net revenue interest (hereinafter defined) in the Leases of not less than those set forth in the Reserve Report dated effective as of December 31, 2014 and prepared by Netherland, Sewell and Associates, Inc. or the Reserve Report otherwise referenced in Section 1(i) of the Note Purchase Agreement, as applicable (other than the interests that have been disposed of in one or more dispositions permitted under the Indenture); no operating agreement, contract or other agreement affecting any part of the Mortgaged Properties to which Mortgagor is a party or to which Mortgagor is bound requires Mortgagor to bear in any material respect the costs relating to the Mortgaged Properties greater than the working interest of Mortgagor in any such portion of the Mortgaged Properties, except in the event that Mortgagor is obligated under an operating agreement to assume a portion of a non-consenting party's share of costs and expenses and, as a result thereof shall own and be entitled to receive an equivalent portion of such non-consenting party's interests in the well and share of Hydrocarbons produced therefrom; all proceeds from the sale of Mortgagor's share of the Hydrocarbons being produced from the Mortgaged Properties are currently being paid in full to Mortgagor by the purchasers thereof on a timely basis and none of such proceeds are currently being held in suspense by such purchaser or any other party; and Mortgagor has full power and lawful authority in all material respects to bargain, grant, sell, mortgage, assign, transfer, convey and grant a security interest in all of the Mortgaged Properties all in the manner and form herein provided and without obtaining the waiver, consent or approval of any lessor, sublessor, governmental agency or entity or party whomsoever or whatsoever. Mortgagor will at all times protect and defend the title to all of the Mortgaged Properties, paying all expenses incurred or to be incurred in defending the title to the same against all claims or charges other than the Permitted Encumbrances, and will indemnify and hold Mortgagee and Holder and the Indemnified Parties harmless against any such claim or charge.

(c)     Mortgagor shall promptly notify the Mortgagee in the event of institution of any suit for the cancellation of or in any manner materially and adversely affecting any of the Leases or any land covered or purported to be covered thereby or the land or the title of Mortgagor thereto.

(d)     Mortgagor shall not place nor suffer to be placed any lien against, or any security interest in, any of the Mortgaged Properties or encumber or allow to be encumbered any of the


Page 11

Mortgaged Properties, whether for indebtedness owed or asserted to be owed by Mortgagor or by any other party, except for Permitted Encumbrances.

(e)     Mortgagor shall pay and discharge promptly all taxes, assessments, and governmental charges or levies imposed upon Mortgagor or upon the income of Mortgagor or of any of the Mortgaged Properties as well as all claims of any kind (including claims for labor, materials, supplies and rent) which, if unpaid, might become a lien upon any or all of the Mortgaged Properties or Hydrocarbons; provided, however, that Mortgagor shall not be required to pay any such tax, assessment, charge, levy or claim if (i) the amount, applicability or validity thereof shall currently be contested in good faith by appropriate proceedings diligently conducted and if Mortgagor shall have set up reserves therefor adequate under generally accepted accounting principles or (ii) the failure to do so would not reasonably be expected to have a Material Adverse Effect.

(f)     Except where the failure to do so would not reasonably be expected to have a Material Adverse Effect, Mortgagor shall operate or cause to be operated all Mortgaged Properties in a careful and efficient manner in accordance with the practice of the industry and in compliance with all applicable laws, rules and regulations, and, in the case of the Leases, in compliance with all applicable proration and conservation laws of the State in which the Leases are situated, and all applicable laws, rules and regulations of every other agency and authority from time to time constituted to regulate the development and operation of the Leases and the production and sale of Hydrocarbons therefrom; provided, however, Mortgagor shall have the right to contest in good faith by appropriate proceedings, the applicability or lawfulness of any such law, rule or regulation and, pending such contest, may defer compliance therewith, so long as such deferment shall not subject the Mortgaged Properties or any part thereof to foreclosure or loss.

(g)     Except where the failure to do so would not reasonably be expected to have a Material Adverse Effect, Mortgagor shall keep and maintain or cause to be kept and maintained all buildings, improvements, equipment and personal property constituting part of the Mortgaged Properties in good and workable condition at all times, ordinary wear and tear excepted, and Mortgagor shall make all repairs, replacements, additions, betterments and improvements to the Mortgaged Properties as are needed and proper so that the business carried on in connection therewith may be conducted properly and efficiently at all times. To the extent failure to do so would have a material adverse effect on the value of the Mortgaged Properties, Mortgagor will not (i) commit or suffer any waste of any of the Mortgaged Properties, (ii) commit or suffer any violation of any law, regulation, ordinance or contract affecting any of the Mortgaged Properties, (iii) commit or suffer any demolition, removal or material alteration of any of the Mortgaged Properties without the prior written consent of the Mortgagee, which Mortgagee may give or withhold in its sole discretion unless directed otherwise by the Majority Holders (iv) fail to guard every part of the Mortgaged Properties from removal, destruction and damage, or (v) do or suffer to be done any act whereby the value of any part of the Mortgaged Properties may be lessened.

(h)     Mortgagor shall maintain insurance on the Mortgaged Properties and as required by the Indenture and shall apply any insurance proceeds in accordance with the Indenture and the Intercreditor Agreement.

(i)     Mortgagor shall pay the Obligations according to the reading, tenor and effect thereof, and shall do and perform every act and discharge all of the obligations provided to be performed and discharged by Mortgagor under the Obligations and under this instrument at the time or times and in the manner specified.

Page 12

(j)      Consistent with the terms of the Indenture, Mortgagor shall cure promptly any defects in the creation and issuance of the Obligations and the execution and delivery of this instrument. Mortgagor at Mortgagor's expense will in accordance with the Indenture or Note Purchase Agreement, as applicable, promptly execute and deliver to the Mortgagee upon request all such other and further documents, agreements and instruments in compliance with or accomplishment of the covenants and agreements of Mortgagor herein or to further evidence and more fully describe the Mortgaged Properties, or to correct any omissions in this instrument, or more fully to state the security obligations set out herein, or to perfect, protect and, or, preserve any lien or security interest created hereby, or to make any recordings, or to file any notices, or obtain any consents, all as may be necessary or appropriate in connection with any thereof. Mortgagor shall pay for all reasonable costs of preparing, recording and releasing any of the above.

(k)      Mortgagor has not created or permitted to exist and will not hereafter create or permit to exist any gas imbalance or any take-or-pay or other prepayments with respect to any of the Mortgaged Properties which would require the Mortgagor to deliver Hydrocarbons produced from the Mortgaged Properties at some future time without then or thereafter receiving full payment therefor exceeding the volumes permitted by Section 1(l) of the Note Purchase Agreement.

(l)      Mortgagor will advise the Mortgagee promptly of (i) any lien, privilege, security interest, encumbrance or claim other than Permitted Encumbrances made or asserted against all or any part of the Mortgaged Properties and the amount claimed thereby, and (ii) the occurrence of any other event which would have a material adverse effect on the aggregate value of the Mortgaged Properties or on the lien and security interest created hereunder, and the amount of the effect on the Mortgaged Properties.

(m)      Mortgagor will promptly notify the Mortgagee of any event causing loss or depreciation in value of the Mortgaged Properties which has a Material Adverse Effect and the amount of such loss or depreciation.

2.2      If Mortgagor fails to perform any act which hereunder it is required to perform or to pay any money which hereunder it is required to pay, Mortgagee, following an occurrence and, during the continuance of an Event of Default, may, but shall not be obligated to, perform or cause to be performed such act or pay such money. Mortgagor will, upon request, promptly reimburse Mortgagee for all amounts expended, advanced or incurred by Mortgagee to satisfy any obligation of Mortgagor under this instrument or to protect the Mortgaged Properties or to collect the Obligations or to enforce the rights of Holder under this instrument, which amounts will include all court costs, attorney's fees, fees of auditors and accountants, and investigation expenses reasonably incurred by Mortgagee in connection with any such matters, together with interest on each such amount from the date that the same is expended, advanced or incurred by Mortgagee until the date of written demand or request by Mortgagee for the reimbursement of same, at a rate of interest (herein called the "*Default Rate*") equal to the lesser of (i) the maximum lawful rate of interest permitted by applicable usury laws, now or hereafter enacted, which interest rate shall change when and as said laws shall, change to the extent permitted by said laws, effective on the day such change in said laws becomes effective (herein called the "*Maximum Lawful Rate*") or (ii) a varying rate per annum which is two percent (2%) per annum above the rate of interest on the Notes that is set forth in the Notes

2.3      To the full extent permitted by applicable law, Mortgagor agrees to defend, indemnify and hold harmless Mortgagee and its directors, officers, employees, advisors, attorneys and agents (the "*Indemnified Parties*") from and against any and all loss, cost, expense or liability (including attorneys'

fees and court costs) incurred by any Indemnified Party in connection with or otherwise arising out of any and all claims or proceedings (whether brought by a private party, governmental agency or otherwise) for bodily injury, property damage, abatement, remediation, environmental damage or impairment or any other injury or damage resulting from or relating to any hazardous or toxic substance or contaminated material located upon, migrating into, from or through or otherwise relating to the Mortgaged Properties (whether or not the release of such materials was caused by Mortgagor, a tenant or subtenant of Mortgagor, a prior owner, a third-party operator, a tenant or subtenant of any prior owner or any other party and whether or not the alleged liability is attributable to the handling, storage, generation, transportation or disposal of such substance or the mere presence of the substance on the Mortgaged Properties), which any Indemnified Party may incur due to the purchase and sale of the Notes evidenced by the Obligations, the exercise of any of its rights under this Mortgage, the execution, delivery, enforcement, performance, administration or otherwise arising out of or incurred in connection with this Mortgage, any other related document or any transaction contemplated hereby or thereby (and regardless of whether or not any such transactions are consummated), or otherwise, but excluding any loss, cost, expense or liability due to any Indemnified Party's gross negligence or willful misconduct as determined by a court of competent jurisdiction by final non-appealable judgment.  For the purposes of the indemnity contained in this paragraph, hazardous or toxic substances or contaminated material include, but are not limited to, asbestos and those substances within the scope of all federal, state and local environmental laws and ordinances, including the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act and the Superfund Amendment and Reauthorization Act as same may be amended from time to time.  The provisions of this paragraph shall survive, and shall in no manner or to any extent be extinguished, diminished, novated or affected by, any foreclosure of the liens created by this Mortgage or any conveyance in lieu of foreclosure and the repayment of the Obligations and the discharge and release of this Mortgage.

## ARTICLE III.
## ASSIGNMENT OF RUNS

3.1         For the purpose of additionally securing the payment of the Obligations and to facilitate the discharge of any of the Obligations and as cumulative of any and all rights and remedies herein provided for, effective as of the Effective Date, Mortgagor hereby bargains, sells, transfers, assigns, sets over and conveys unto Mortgagee, for the benefit of the Secured Parties, its interest in the Hydrocarbons, together with its share of the proceeds derived from the sale thereof (such proceeds being hereinafter called "*proceeds of runs*").  Mortgagor directs and instructs each purchaser of the Hydrocarbons to pay to Mortgagee all of the proceeds of runs during the continuation of an Event of Default until such time as such purchaser has been furnished evidence that such Event of Default is no longer continuing or that all Obligations have been paid and that the lien evidenced hereby has been released.  Mortgagor authorizes Mortgagee to receive and collect all sums of money derived from the proceeds of runs during the continuation of an Event of Default, and no purchaser of the Hydrocarbons shall have the responsibility for the application of any funds paid to Mortgagee.

3.2         Independent of the foregoing provisions and authorities herein granted, Mortgagor agrees to execute and deliver any and all transfer orders, division orders and other instruments that may be requested by the Mortgagee or that may be required by the purchaser of the Hydrocarbons for the purpose of effectuating payment for the proceeds of runs to Mortgagee during the continuance of an Event of Default as such term is defined below.

3.3         So long as no Event of Default shall have occurred and be continuing and none of the Obligations secured hereby shall be or become due and unpaid, the monthly proceeds of runs shall be released to or upon the order of the Mortgagor.  Upon an Event of Default, the monthly proceeds of runs actually received by Mortgagee may be held by Mortgagee and applied in the manner set forth in the

Indenture, with the balance, if any, to be returned to Mortgagor. In its sole discretion, Mortgagee may, but shall not be obligated to, elect to return any part of said funds to Mortgagor or to deposit the same to Mortgagor's account without applying it to the Obligations.

3.4     The receipt by Mortgagee of any monies, including but not limited to money received as proceeds of runs, shall not in any manner change or alter in any respect the obligations of Mortgagor upon the Obligations or other evidence of the Obligations, and nothing herein contained shall be construed as limiting Mortgagee to the collection of any of the Obligations out of the proceeds of runs. The Obligations shall continue as the absolute and unconditional obligation of Mortgagor to pay, as provided in the Notes or other instruments evidencing the Obligations, the amounts therein specified at their respective maturity dates, whether by acceleration or otherwise.

3.5     Mortgagee is hereby absolved from all liability for failure to enforce collection of the proceeds of runs and from all other responsibility in connection therewith except the responsibility to account to Mortgagor for funds actually received. Mortgagor agrees to indemnify and hold Mortgagee or any Holder and the Indemnified Parties harmless against any and all liabilities, actions, claims, judgments, costs, charges and attorneys' fees by reason of the assertion that Mortgagee or any Holder or any of the Indemnified Parties has received, either before or after the payment in full of the Obligations, funds from the sale of Hydrocarbons claimed by third persons, except for third parties who have valid claims. Mortgagee or any Holder or any of the Indemnified Parties shall have the right to defend against any such claims or actions, employing attorneys of its own selection. If not furnished with indemnity satisfactory to the Mortgagee, Mortgagee shall have the right to compromise and adjust any such claims, actions and judgments, and, in addition to the rights to be indemnified as herein provided, all amounts paid by Mortgagee or any Holder or any of the Indemnified Parties in compromise, satisfaction or discharge of any such claim, action or judgment and all reasonable court costs, attorneys' fees and other expenses of every character incurred by Mortgagee or any Holder or any of the Indemnified Parties shall be a demand obligation owing by Mortgagor, shall be secured by the lien and security interest evidenced by this instrument and shall bear interest on each such amount from the date that the same is expended, advanced or incurred by Mortgagee until the date of written demand or request by the Mortgagee for the reimbursement of same, at the Default Rate.

Each of the provisions of this *Article III* shall be deemed a covenant running with the land and shall be binding upon Mortgagor, its successors and assigns, and inure to the benefit of the Mortgagee, its successors and assigns and each Holder, their successors and assigns.

## ARTICLE IV.
## RELEASES

4.1     If all Obligations be paid as the same become due and payable and if the covenants, warranties, undertakings and agreements made in this instrument are kept and performed, then and in that case only, this document shall have no force and effect, this Mortgage shall become null and void, the Mortgaged Properties hereby conveyed shall become wholly clear of the liens, conveyances, assignments and security interests evidenced hereby, and all such liens, conveyances, assignments and security interests shall be released. In addition, the liens, conveyances, assignments and security interests securing the Obligations shall be released in whole or in part as provided in Section 12.04 of the Indenture.

4.2     Upon any sale, lease, transfer or other disposition by Mortgagor of any portion of the Mortgaged Property that is permitted under the Indenture to any Person that is not the Company or a Restricted Subsidiary (each as defined in the Indenture), the lien, conveyance, assignment and security interest granted hereunder in such disposed of portion of the Mortgaged Property shall be automatically

Page 15

released. For the avoidance of doubt, any such partial release will not affect the lien, conveyance, assignment and security interest granted hereunder as to the remainder of the Mortgaged Property.

4.3     Upon the effectiveness of any consent to the release of any lien, conveyance, assignment and/or security interest granted hereunder in the Mortgaged Property pursuant to Section 12.04(5) of the Indenture, such lien, conveyance, assignment and/or security interest in the Mortgaged Property shall be automatically released to the extent expressly stated in such consent. For the avoidance of doubt, any such partial release will not affect the lien, conveyance, assignment and security interest granted hereunder as to the remainder of the Mortgaged Property.

4.4     The lien and security interests granted hereunder on any Mortgaged Property which is property leased to Mortgagor shall be automatically released upon the termination or expiration of such lease, pursuant to Section 12.04(7) of the Indenture and the Intercreditor Agreement, but only to the extent such lien and security interests encumber the Mortgaged Property subject to such terminated or expired lease. For the avoidance of doubt, any such partial release will not affect the lien, conveyance, assignment and security interest granted hereunder as to the remainder of the Mortgaged Property.

4.5     The lien and security interests granted hereunder in the Collateral shall be automatically released as required, and only to the extent so required, pursuant to the terms of the Intercreditor Agreement; provided that the Mortgagee may, but shall not be required to, release the Lien on the Mortgaged Property to the extent permitted (but not required) in the Indenture and the Intercreditor Agreement and shall release the Lien on the Mortgaged Property to the extent required in the Indenture and the Intercreditor Agreement. For the avoidance of doubt, any such partial release will not affect the lien, conveyance, assignment and security interest created hereunder as to the remainder of the Mortgaged Property.

4.6     In connection with any termination or release pursuant to Section 4.1, 4.2, 4.3, 4.4 or 4.5 above, the Mortgagee shall promptly execute and deliver to Mortgagor, at Mortgagor's expense, and after receipt by the Mortgagee of any Officers' Certificates, Opinions of Counsel and other documents or instruments which may be required or which it may be entitled to pursuant to the terms of the Indenture and the Intercreditor Agreement, all releases and similar documents that Mortgagor shall reasonably request to evidence such termination or release. Any execution and delivery of documents pursuant to this Section 4.5 shall be without recourse to or representation or warranty by the Mortgagee or any Holder. Mortgagor shall reimburse the Mortgagee for all reasonable and documented costs and expenses, including the fees, charges and expenses of counsel, incurred by it in connection with any action contemplated by this Section 4.6.

## ARTICLE V.
## REMEDIES IN EVENT OF DEFAULT

5.1     The term *"Event of Default"* as used herein shall mean the occurrence of an *"Event of Default"* under the Indenture.

5.2     Upon the occurrence of an Event of Default, Mortgagor hereby authorizes and empowers the Trustee, and each and all of his, her or its successors in this trust, at the request of Mortgagee) to sell the Mortgaged Properties at public sale to the highest bidder, for cash, between the hours of 10:00 a.m. and 4:00 p.m. of the first Tuesday of any month, after having given notice of the sale at least twenty-one (21) days prior to the date of the sale, in the manner hereinafter described, in the county in which the Mortgaged Properties, or any part thereof are situated; provided that, if the Mortgaged Properties are situated in more than one county, such sale of the Mortgaged Properties, or part thereof, may be made in

any county in the State of Texas wherein any part of the Mortgaged Properties are situated. The sale shall be made at the area of the County Courthouse designated for such sales by the Commissioner's Court of such county in an instrument heretofore recorded in the real property records of that county; provided that, if said Commissioner's Court has not heretofore recorded a written instrument designating the area in which such sales shall occur in the real property records of such county, then the sale shall take place at the area of the County Courthouse designated in the notice of sale. The sale shall begin at the time stated in the notice of sale, or not later than three (3) hours after that time. The notice of sale shall include a statement of the earliest time at which the sale will occur and shall be given by posting (or by having someone person or persons acting for Trustee post), for at least twenty one (21) days preceding the date of the sale, written or printed notice of the proposed sale at the Courthouse door of said county in which the sale is to be made, and if such property is in more than one county, one such notice of sale shall be posted at the Courthouse door of each county in which part of such property is situated and such property may be sold at the courthouse door of any one of such counties, and the notice so posted shall designate in which county such property shall be sold in addition to such posting of notice, Mortgagee shall, at least twenty one (21) days preceding the date of sale, file a copy of such written notice of the proposed sale in the office of the county clerk of the county in which the sale is to be made, and if such property is in more than one county, a copy of such written notice of sale shall be so filed in the office of the county clerk of each county in which part of such property is situated; in addition to such posting and filing of notice, Mortgagee shall, at least twenty one (21) days preceding the date of sale, serve written or printed notice of the proposed sale by certified mail on Mortgagor. Service of such notice shall be completed upon deposit of the notice, enclosed in a postpaid wrapper, properly addressed to Mortgagor at its most recent address or addresses as shown by the records of Mortgagee, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service. Mortgagor agrees that no notice of any sale other than as set out in this paragraph need be given by Trustee, Mortgagee or any other person. Mortgagor hereby designates as its address for the purposes of such notice, the address set out hereinabove, and agrees that such address shall be changed only by depositing notice of such change, enclosed in a postpaid wrapper, in a post office or official depository under the care and custody of the United States Postal Service, certified mail postage prepaid, return receipt requested, addressed to Mortgagee at the address for Mortgagee set out herein (or to such other address as Mortgagee may have designated by notice given as above provided to Mortgagor), any such notice of change of address of Mortgagor shall be effective upon receipt by Mortgagee. Any change of address of Mortgagee shall be effective three (3) business days after deposit thereof in the above described manner in the care and custody of the United States Postal Service. Upon the occurrence of an Event of Default, Mortgagor hereby authorizes and empowers the Trustee, and each and all of Trustee's successors in this trust, to sell the Mortgaged Properties, or any interest or estate in the Mortgaged Properties together or in lots or parcels, as such Trustee shall deem expedient, and to execute and deliver to the purchaser or purchasers of the Mortgaged Properties good and sufficient deed or deeds of conveyance thereof and bills of sale with covenants of general warranty binding on Mortgagor and its successors and assigns. The recitals in any deed, assignment or other conveyance given by Trustee of a default, publication of notice of sale, demand that such sale should be made, postponement of sale, terms of sale, sale, name of purchaser, payment of purchase money and any other facts affecting the regularity or validity of such sale shall be prima facie evidence of the truthfulness thereof; and such deed or deeds shall be conclusive against all persons as to all matters or facts therein recited.

5.3        Upon the occurrence and during the continuance of any Event of Default and in every such case the Mortgagee, may, but shall not be obligated to: (a) proceed to protect and enforce its rights by a suit or suits in equity or at law, either for the specific performance of any covenant of agreement contained herein, in the Note Documents, or in aid of the execution of any power herein or therein granted, or for the foreclosure of this Mortgage, or for the enforcement of any other appropriate legal or

equitable remedies; (b) take possession of and sell all or part, as determined by Mortgagee in its sole discretion, of the Mortgaged Properties, under the applicable laws of the State of Texas pertaining to the foreclosure of mortgages and subsequent sale of foreclosed assets; (c) take possession of the Mortgaged Properties, maintain, operate and control the Mortgaged Properties, and apply all proceeds derived therefrom, after payment of royalties and operating expenses, to the payment of the hereby secured and all necessary and reasonable costs and expenses, including reasonable attorneys' fees, until fully paid, Mortgagor agrees to give Mortgagee immediate, peaceable possession; (d) to the extent permitted by law, resort to and realize upon the security hereunder and any other security now or later held by Mortgagee concurrently or successively in one or several consolidated or independent judicial actions or lawfully taken non-judicial proceedings, or both, and to apply the proceeds received upon the Obligations all in such order and manner as the Mortgagee determines in its sole discretion and to the extent provided by law; and (e) in any action to foreclose, appoint a receiver of the rents, issues and profits of the Mortgaged Properties as a matter of right and without notice, with power to collect the rents, issues and the value of the Mortgaged Properties. Mortgagor, for itself and any subsequent owner or owners, hereby waives any and all defenses to the application for a receiver as above provided, and hereby specifically consents to such appointment without notice; but nothing herein contained is to be construed to deprive Mortgagee of any other right, remedy or privilege it may now have under the law to have a receiver appointed. The provision for the appointment of a receiver of the rents and profits is made an express condition upon which the purchase and sale of the Notes under the Indenture and Note Purchase Agreement are made.

5.4       Upon the occurrence and during the continuation of an Event of Default, Mortgagee may, in its sole and absolute discretion, elect to treat the fixtures constituting a part of the Mortgaged Properties as either real property or personal property and proceed to exercise such rights as apply to such type of property above or under the Uniform Commercial Code.

5.5       Upon occurrence and during the continuation of an Event of Default, Mortgagee, in lieu of or in addition to exercising any power of sale hereinabove given may, in its sole discretion, or shall, at the written request of the Majority Holders, proceed by a suit or suits in equity or at law, whether for a foreclosure hereunder, or for the sale of the Mortgaged Properties (or a part thereof), or for the specific performance of any covenant or agreement contained herein, or in aid of the execution of any power herein granted, or for the appointment of a receiver pending any foreclosure hereunder or the sale of all or part of the Mortgaged Properties, or for the enforcement of any other appropriate legal or equitable remedy. Upon occurrence and during the continuation of an Event of Default, Mortgagor agrees that the appointment of a receiver shall be a matter of right and shall not require proof of insolvency, fraud, insecurity, or mismanagement on the part of Mortgagor. Mortgagor agrees that such receiver may be appointed to take possession of, hold, maintain, operate, and preserve all or a portion of the Mortgaged Properties, including the production and sale of all Hydrocarbons therefrom, and to apply the proceeds of the sale thereof set forth in *Section 5.10* hereof; and said receiver may be authorized to sell and dispose of all or a portion of the Mortgaged Properties under orders of the court appointing such receiver. The rights of entry, sale, or suit, as herein conferred, are cumulative of all other rights and remedies herein or by law or in equity provided, and shall not be deemed to deprive Mortgagee or any Holder of any such other legal or equitable rights or remedies, by judicial proceedings or otherwise, appropriate to enforce the conditions, covenants, and terms of this Mortgage and of said Obligations, and the employment of any remedy hereunder, or otherwise, shall not prevent the concurrent or subsequent employment of any other remedy or remedies.

5.6       It shall not be necessary for Mortgagee to have physically present or constructively in his possession at any sale held by Mortgagee or by any court, receiver, or public officer any or all of the Mortgaged Properties, and Mortgagor shall deliver to the purchaser at such sale on the date of sale the Mortgaged Properties purchased by such purchasers at such sale, and if it should be impossible or impracticable for any of such purchasers to take actual delivery of the Mortgaged Properties purchased by

it, then the title and right of possession to the Mortgaged Properties shall pass to the purchaser at such sale as completely as if the same had been actually present and delivered.

5.7         Mortgagee shall have the right to become the purchaser at any sale held by the Trustee, any court, receiver or public officer, and Mortgagee shall have the right to credit the outstanding and unpaid Obligations with the amount of the bid made at that sale with the amount payable being the net proceeds of such sale. Recitals contained in any conveyance made to any purchaser of any sale made hereunder shall be prima facie evidence of the truth and accuracy of the matters therein stated, including, without limiting the generality of the foregoing, nonpayment of the unpaid principal sum of, and the interest accrued on, the Notes and/or the Obligations after the same shall have become due and payable, and advertisement and conduct of such sale in the manner provided herein.

5.8         Upon any sale, whether made under the Uniform Commercial Code, the power of sale herein granted and conferred, or by virtue of judicial proceedings, the delivery of a receipt by Mortgagee or of the officer making a sale under judicial proceedings, which acknowledges the payment of purchase money with respect thereto, shall be sufficient discharge to the purchaser or purchasers at any sale for his or their purchase money, and such purchaser or purchasers and his or their successors, assigns or personal representatives, shall not, after paying such purchase money and receiving the receipt of Mortgagee or of such officer therefor, be obliged to see to the application of such purchase money hereunder, or be in any way answerable for any loss, misapplication or non-application thereof hereunder.

5.9         Any sale or sales of the Mortgaged Properties, or any part thereof, whether under the Uniform Commercial Code, the power of sale herein granted and conferred, or by virtue of judicial proceedings, shall operate to divest all rights, titles, interests, claims and demands whatsoever either at law or in equity, of Mortgagor, in and to the Mortgaged Properties sold, and shall be a perpetual bar, both at law and in equity, against Mortgagor, and Mortgagor's successors or assigns, and against any and all Persons claiming or who shall thereafter claim all or any of the Mortgaged Properties sold, including, Mortgagor's successors or assigns. Nevertheless, Mortgagor, if requested by Mortgagee so to do, shall join in the execution and delivery of all conveyances, assignments and transfers of the Mortgaged Properties so sold.

5.10        The proceeds of any sale of the Mortgaged Properties, or any part thereof, whether under the Uniform Commercial Code, the power of sale herein granted and conferred, or by virtue of judicial proceeding, whose application has not elsewhere herein been specifically provided for, shall be applied to the Obligations as set forth in Section 6.10 of the Indenture.

5.11        Mortgagee at all times shall have the right to release any part of the Mortgaged Properties now or hereafter subject to the lien or security interests created hereby or any other lien or security interest it now has or may hereafter have, without releasing any other part of said Mortgaged Properties, and without affecting the lien or security interest created hereby or under any Note Document, as to the part or parts thereof not so released.

5.12        The obligations of Mortgagor hereunder shall survive the non-assumption of and the commencement of any Insolvency Proceeding and shall remain binding upon Mortgagor, or a trustee, receiver, custodian or liquidator of Mortgagor appointed in any such case.

5.13        Mortgagor agrees, to the full extent that Mortgagor may lawfully so agree, that Mortgagor shall not at any time insist upon or plead or in any manner whatsoever claim the benefit of any operator's lien, appraisement (except as otherwise provided in this *Section 5.13*), valuation, stay, extension or redemption of law now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of any Note Document, the absolute sale of any or all of the Mortgaged Properties, or the

possession thereof by any purchaser at any sale made pursuant to any provision hereof or any Note Document, or pursuant to the decree of any court of competent jurisdiction and Mortgagor, for Mortgagor and all who may claim by, through or under Mortgagor, so far as Mortgagor or those claiming by, through or under Mortgagor now or hereafter lawfully may, hereby waive the benefit of all such laws. In the event of judicial foreclosure, Mortgagee hereby waives, or does not waive, appraisement, at the option of Mortgagee, such option to be exercised at or before entry of judgment in an action to foreclose this Mortgage. Mortgagor, for Mortgagor and all who may claim by, through or under Mortgagor (including, without limitation, a holder of a lien or security interest subordinate to the lien or security interests created by this Mortgage, without implying that Mortgagor has, except as expressly provided herein, a right to grant a security interest or lien upon or subordinate a lien or security interest with respect to the Mortgaged Properties), hereby waives, to the fullest extent permitted by applicable law any and all right to have all or any portion of the Mortgaged Properties marshaled upon any foreclosure of the lien and security interest hereof, or sold in inverse order of alienation, and agrees that any court having jurisdiction to foreclose such lien or security interest may sell the Mortgaged Properties as an entirety. If any law referred to in this *Section 5.13* and now in force, of which Mortgagor or Mortgagor's successors or assigns might take advantage despite the provisions hereof, shall hereafter be repealed or cease to be in force, such law shall not thereafter be deemed to constitute any part of the agreement herein contained or to preclude the operation or application of the provisions of this *Section 5.13*.

5.14        All costs and expenses (including, without limitation, reasonable attorneys' fees, court costs and related costs) incurred by Mortgagee in protecting and enforcing its rights under any Note Document, shall, to the extent permitted by applicable law, constitute a demand obligation owing by Mortgagor to the party incurring such costs and expenses and shall bear interest until paid in accordance with the Indenture.

5.15        For the avoidance of doubt, any non-judicial foreclosure sale and notice thereof pursuant to this Mortgage shall be made, as the case may be: (a) in the case of the Mortgaged Properties consisting of real property, in accordance with the then applicable provisions of Chapter 51 of the Texas Property Code, as amended (the "*Property Code*"), or any successor statute, or (b) in the case of the Collateral by accomplishing all or any of the aforesaid in such manner as permitted or required by Chapter 9 of the Uniform Commercial Code relating to the sale of collateral after default by a debtor (as such laws now exist or may be hereafter amended or succeeded), or by any other present or subsequent amendments or enactments relating to same (with it being understood that pursuant to Section 9.604 of the Uniform Commercial Code, Mortgagee has the right, at its option to proceed (x) under Chapter 9 of the Uniform Commercial Code as to personal property without prejudicing any rights with respect to real property, or (y) as to both personal property and real property in accordance with the Mortgagee's rights with respect to such real property).

## ARTICLE VI.
## APPOINTMENT OF SUBSTITUTE OR SUCCESSOR TRUSTEE

6.1        Mortgagee may at any time, by an instrument in writing appoint a successor to Trustee, which instrument shall contain the name of Mortgagor, of Trustee and of the Mortgagee, the places of recordation of this instrument in the real property records of any county where it has been recorded, and the name and address of the new Trustee. Such instrument when executed, acknowledged and recorded shall be conclusive proof of the proper substitution of such successor Trustee. Such successor Trustee, without conveyance from the predecessor Trustee, shall succeed to all of the rights, titles, estates, powers and duties of the predecessor Trustee. In like manner successive successor Trustees may be appointed in place of any prior Trustee or successor.

## ARTICLE VII.
## SECURITY AGREEMENT

7.1          Mortgagor hereby agrees that with respect to all items of the Mortgaged Properties constituting "personal property" (including any fixtures and as-extracted collateral that are personal property under applicable state law) as that term is used in the Uniform Commercial Code this Mortgage constitutes a "Security Agreement," as that term is used in the Uniform Commercial Code, and to further secure the Obligations, Mortgagor hereby grants to Mortgagee, for the benefit of the Secured Parties, a security interest in all of Mortgagor's rights, titles and interests in and to the Mortgaged Properties insofar as such Mortgaged Properties consist of the goods, equipment, accounts, contract rights, general intangibles, inventory, hydrocarbons, fixtures and any and all other personal property of any kind or character defined in and subject to the provisions of the Uniform Commercial Code presently in effect in the State of Texas (the "*Uniform Commercial Code*"), including the proceeds and products from any and all of such personal property but excluding all Excluded Assets (all of the foregoing being in this *Article VII* collectively called the "*Collateral*"). Upon the occurrence of any Event of Default, Mortgagee is and shall be entitled to all of the rights, powers and remedies afforded a secured party by the Uniform Commercial Code with reference to the personal property and fixtures in which Mortgagee has been granted a security interest herein, or Mortgagee may proceed as to both the real and personal property covered hereby in accordance with the rights and remedies granted under this instrument in respect of the real property covered hereby. Such rights, powers and remedies shall be cumulative and in addition to those granted Mortgagee under any other provision of this instrument or under any other instrument executed in connection with the Indenture or any of the Obligations, including, without limitation, all Note Documents. Mortgagor, as Debtor (and in this *Article VII* and otherwise herein called "*Debtor*") covenants and agrees with Mortgagee that:

(a)          To the extent permitted by law, Debtor expressly waives any notice of sale or other disposition of the Collateral and any other right of remedies of a debtor or formalities prescribed by law relative to the sale or disposition of the Collateral or exercise of any other right or remedy of Mortgagee existing after default hereunder; and to the extent any such notice is required and cannot be waived, Debtor agrees that if such notice is mailed, postage prepaid, to Debtor at Debtor's address set out herein at least ten (10) days before the time of the sale or disposition, such notice shall be deemed reasonably and shall fully satisfy any requirement for giving of said notice.

(b)          Following an Event of Default, Mortgagee is expressly granted the right at its option, to transfer at any time to itself or to its nominee the Collateral, or any part thereof, and to receive the monies, income, proceeds, or benefits attributable or accruing thereto and to hold the same as security for the Obligations or to apply it on the principal and interest or other amounts owing on any of the Obligations, whether or not then due, in such order or manner as Mortgagee may elect in its sole discretion. All rights to marshalling of assets of Debtor, including any such right with respect to the Collateral, are hereby waived.

(c)          All recitals in any instrument of assignment or any other instrument executed by Mortgagee incident to sale, transfer, assignment or other disposition or utilization of the Collateral or any part thereof hereunder shall be, in the absence of manifest error, be prima facie evidence of the matter stated therein, no other proof shall be required to establish full legal propriety of the sale or other action or of any fact, condition or thing incident thereto, and all prerequisites of such sale or other action and of any fact, condition or thing incident thereto shall be presumed to have been performed or to have occurred.

(d)    All expenses of preparing for sale, or other use or disposition, selling or otherwise using or disposing of the Collateral and the like which are incurred or paid by Mortgagee as authorized or permitted hereunder, including also all reasonable attorneys' fees, legal expenses and costs, shall be added to the Obligations and the Debtor shall be liable therefor.

(e)    Should Mortgagee elect to exercise its rights under the Uniform Commercial Code as to part of the Collateral, this election shall not preclude the Trustee or Mortgagee from exercising any other rights and remedies granted by this instrument as to the remainder of the Collateral.

(f)    Any copy of this instrument may also serve as a financing statement under the Uniform Commercial Code between the Debtor, whose present address is Mortgagor's address listed on the first page of this Mortgage, and Mortgagee, whose present address is the Mortgagee's address listed on the first page of this Mortgage.

(g)    So long as any amount remains unpaid on any of the Obligations, Debtor will not execute and there will not be filed in any public office any financing statement or statements affecting the Collateral other than financing statements in favor of Mortgagee hereunder and financing statements pertaining to Permitted Liens, unless the prior written specific consent and approval of Mortgagee shall have first been obtained, which consent Mortgagee may give or withhold in its sole discretion unless directed otherwise by the Majority Holders.

(h)    Mortgagee is authorized to file, in any jurisdiction where Mortgagee deems it necessary, a financing statement or statements covering the Collateral, and at the reasonable request of Mortgagee, Debtor will join Mortgagee in executing one or more such financing statements pursuant to the Uniform Commercial Code in form satisfactory to Mortgagee, and will pay the cost of filing or recording this instrument, as a financing statement, in all public offices at any time and from time to time whenever filing or recording of any financing statement or of this instrument is reasonably deemed by Mortgagee to be necessary or desirable.

(i)    The office where Debtor keeps Debtor's accounting records concerning the Collateral covered by this Security Agreement is Mortgagor's address as set forth on the first page of this Mortgage.

7.2    Portions of the Collateral consist of (a) oil, gas and other minerals and as-extracted collateral produced or to be produced from the lands described in the Leases and to the accounts resulting from the sale thereof at the wellhead, or (b) goods which are or will become fixtures attached to the real estate constituting a portion of the Mortgaged Properties, and Debtor hereby agrees that this instrument shall be filed in the real property records of the Counties in which the Mortgaged Properties are located as a financing statement to perfect the security interest of Mortgagee in said portions of the Collateral. The said oil, gas and other minerals, and as-extracted collateral and accounts will be financed at the wellhead of the oil and gas wells located on the lands described in the Leases. The name of the record owner of the Mortgaged Properties is the party named herein as Mortgagor and Debtor. Nothing herein contained shall impair or limit the effectiveness of this document as a security agreement or financing statement for other purposes.

7.3    Portions of the Mortgaged Properties are or will become fixtures relating to the Mortgaged Properties, and Mortgagor expressly covenants and agrees that the filing of this Mortgage in the Real Property Records in the county where the Mortgaged Properties is located shall also operate from the time of filing therein as a financing statement in accordance with Section 9.502(c) of the Uniform

Commercial Code in effect in Texas, or other applicable law. The name of the record owner of the Property covered hereby is the party or parties defined herein as Mortgagor.

## ARTICLE VIII.
## MISCELLANEOUS PROVISIONS

8.1     All options and rights of election herein provided for the benefit of Mortgagee are continuing, and the failure to exercise any such option or right of election upon a particular Event of Default or upon any subsequent Event of Default shall not be construed as waiving the right to exercise such option or election at any later date. By the acceptance of payment of any sum secured hereby after its due date, Mortgagee shall not be deemed to have waived the right either to require prompt payment when due of all other sums so secured or to regard as an Event of Default the failure to pay any other sums due which are secured hereby. No exercise of the rights and powers herein granted and no delay or omission in the exercise of such rights and powers shall be held to exhaust the same or be construed as a waiver thereof, and every such right and power may be exercised at any time and from time to time.

8.2     All Obligations shall be payable at the office of Mortgagee listed on the first page of this Mortgage or at such place as Mortgagee may from time to time designate in writing.

8.3     The terms, provisions, covenants and conditions hereof shall be binding upon Mortgagor, Mortgagor's successors, legal representatives, and assigns, and shall inure to the benefit of Mortgagee, its successors and assigns, and all other Holders of the Obligations, or any part thereof, and their respective successors and assigns, subject to the restrictions on assignment set forth in the Note Purchase Agreement.

8.4     If any provision hereof is invalid or unenforceable in any jurisdiction, the other provisions hereof shall remain in full force and effect in such jurisdiction, and the remaining provisions hereof shall be liberally construed in favor of the Mortgagee in order to effectuate the provisions hereof, and the invalidity or unenforceability of any provision hereof in any jurisdiction shall not affect the validity or enforceability of any such provision in any other jurisdiction.

8.5     It is the intention of the parties hereto to comply with the applicable usury laws; accordingly, it is agreed that notwithstanding any provisions to the contrary in the Indenture, the Note, any instrument evidencing the Obligations, this instrument or in any of the documents or instruments securing payment of the Obligations or otherwise relating thereto, in no event shall the Note or such documents require the payment or permit the collection of interest in excess of the maximum amount permitted by such laws. If any such excess of interest is contracted for, charged or received, under the Indenture, the Note, any instrument evidencing the Obligations, this instrument or under the terms of any of the other documents securing payment of the Obligations or otherwise relating thereto, or in the event the maturity of any of the Obligations is accelerated in whole or in part, or in the event that all or part of the principal or interest of the Obligations shall be prepaid, so that under any of such circumstances, the amount of interest contracted for, charged or received, under the Note or any instruments evidencing the Obligations, under the Indenture, this instrument or under any of the other instruments securing payment of the Obligations, under the Indenture, this instrument or under any of the other instruments securing payment of the Obligations, and the amount of principal actually outstanding from time to time under the Notes and other instruments evidencing the Obligations, shall exceed the maximum amount of interest permitted by the applicable usury laws, now or hereafter enacted, then in any such event (a) the provisions of this paragraph shall govern and control, (b) neither Mortgagor nor any other person or entity now or hereafter liable for the payment of the Notes or any instrument evidencing the Obligations shall be obligated to pay the amount of such interest to the extent that it is in excess of the

maximum amount of interest permitted by the applicable usury laws, now or hereafter enacted, (c) any such excess that may have been collected shall be either applied as a credit against the then unpaid principal amount hereof or refunded to Mortgagor, at the Mortgagee's option, and (d) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under the applicable usury laws, now or hereafter enacted.  It is further agreed that without limitation of the foregoing, all calculations of the rate of interest contracted for, charged or received under the Note, or any other instrument evidencing the Obligations, under this instrument or under such other documents that are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by the applicable usury laws, now or hereafter enacted, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the Notes or the instruments evidencing the Obligations, all interest at any time contracted for, charged or received from Mortgagor or otherwise by Mortgagee in connection with such Notes.

8.6         This Mortgage may be executed in several counterparts, all of which are identical, except that to facilitate recordation, certain counterparts hereof may include only that part of *Exhibit A* which contains descriptions of the properties located in (or otherwise subject to the requirements and/or protection of the recording or filing acts or regulations of) the recording jurisdiction in which the particular counterpart is to be recorded, and other Parts of *Exhibit A* shall be included in such counterparts by reference only.  All such counterparts together shall constitute one and the same instrument.  Complete counterparts of this Mortgage containing the entire *Exhibit A* have been retained by Mortgagor and Mortgagee.  For convenience of recorders, it is noted that the pagination of *Exhibit "A,"* even with a particular recording counterpart, may not be consecutive.

8.7         THIS INSTRUMENT, EXCEPT AS EXPRESSLY PROVIDED BELOW WITH RESPECT TO THE TEXAS LAW COLLATERAL (HEREINAFTER DEFINED), SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE UNITED STATES AND STATE OF NEW YORK.  NOTWITHSTANDING THE FOREGOING PROVISIONS OF THIS SECTION, THE TEXAS LAW PROVISIONS (HEREINAFTER DEFINED) SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS.  THE *"TEXAS LAW PROVISIONS"* ARE THOSE PROVISIONS OF THIS INSTRUMENT REGARDING THE CREATION, PERFECTION, PRIORITY, ENFORCEMENT AND FORECLOSURE OF THE LIENS AND SECURITY INTERESTS IN THAT PORTION OF THE MORTGAGED PROPERTIES CONSISTING OF REAL PROPERTY, FIXTURES AND AS-EXTRACTED COLLATERAL LOCATED IN THE STATE OF TEXAS (THE *"TEXAS LAW COLLATERAL"*) AND THE NATURE OF AN INTEREST IN THE TEXAS LAW COLLATERAL RESULTING FROM ANY SUCH ENFORCEMENT OR FORECLOSURE.

8.8         This instrument may, as Mortgagee elects, be enforced from time to time as a mortgage, mortgage-collateral real estate mortgage, conveyance, assignment, security agreement, fixture filing, as-extracted collateral filing, financing statement, contract or any one or more of these as may be appropriate under applicable law, in order fully to effectuate the lien hereof and the purposes and agreements herein set forth.

8.9         Each of the provisions of this Mortgage shall be deemed a covenant running with the land and shall be binding upon Mortgagor, its successors and assigns, and inure to the benefit of Mortgagee, its successors and assigns.

8.10        This Mortgage may be executed in any number of counterparts, each of which shall for all purposes be deemed to be an original, and all of which are identical except that, to facilitate recordation or filing, in any particular counterpart portions of *Exhibit A* which describe properties

situated in counties other than the county in which such counterpart is to be recorded may have been omitted. A complete counterpart of this Mortgage may be obtained from Mortgagee.

8.11      Reference is made to the Intercreditor Agreement, dated as of April 8, 2015 (the "*Intercreditor Agreement*"), among Wells Fargo Bank, National Association as agent for the Priority Lien Secured Parties referred to therein (the "*Priority Lien Collateral Agent*"); U.S. Bank National Association, as Second Lien Collateral Trustee (as defined therein); Breitburn Energy Partners LP, Breitburn Finance Corporation, Breitburn Operating LP, and the other subsidiaries of Breitburn Energy Partners LP named therein from time to time (the "*Guarantors*"). Each Person that is secured hereunder, by accepting the benefits of the security provided hereby, (i) consents (or is deemed to consent), to the subordination of Liens provided for in the Intercreditor Agreement, (ii) agrees (or is deemed to agree) that it will be bound by, and will take no actions contrary to, the provisions of the Intercreditor Agreement, (iii) authorizes (or is deemed to authorize) the Second Lien Collateral Trustee on behalf of such Person to enter into, and perform under, the Intercreditor Agreement and (iv) acknowledges (or is deemed to acknowledge) that a copy of the Intercreditor Agreement was delivered, or made available, to such Person. Notwithstanding any other provision contained herein, this Mortgage, the Liens created hereby and the rights, remedies, duties and obligations provided for herein are subject in all respects to the provisions of the Intercreditor Agreement. In the event of any conflict or inconsistency between the provisions of this Mortgage and the Intercreditor Agreement, the provisions of the Intercreditor Agreement shall control. Without limiting the foregoing, at any time prior to the release of liens related to the Third Amended and Restated Credit Agreement, dated as of November 19, 2014, by and among the Mortgagor, the other Note Parties, the Priority Lien Collateral Agent and the lenders party thereto, as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and as permitted under the Intercreditor Agreement and the Indenture, any provision hereof requiring Mortgagor to deliver possession of any Collateral to the Mortgagee, or to cause the Mortgagee to control any Collateral, shall be deemed to have been complied with, if and for so long as (i) the Intercreditor Agreement is in full force and effect and (ii) the Priority Lien Collateral Agent shall have such possession or control for the benefit of the Mortgagee and as bailee or sub-agent of the Mortgagee as provided in the Intercreditor Agreement.

8.12      Nothing contained in this Mortgage shall be construed as constituting Mortgagee a mortgagee in possession in the absence of the actual taking of possession of the Mortgaged Properties.

8.13      Any provision hereof found to be invalid under applicable law shall be invalid only with respect to the offending provision.

8.14      The terms of the Indenture and the Security Agreement are incorporated by reference herein as though set forth in full detail. In the event of any conflict between any term or provision of this Mortgage and the Indenture, the terms and provisions of the Indenture shall control.

8.15      Notwithstanding anything to the contrary contained in this Mortgage, the agreements, covenants, representations and warranties contained herein are made by each Mortgagor, separately and individually, as they relate to such Mortgagor and the Mortgaged Properties as to which such Mortgagor has any right, title and interest, and not with respect to any other Mortgagor or such other Mortgagor's Mortgaged Properties.

NOTICE: THIS MORTGAGE AND ALL OTHER NOTE DOCUMENTS TOGETHER CONSTITUTE A WRITTEN INDENTURE WHICH REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR,

Page 25