Ray C. Schrock, P.C.
Stephen Karotkin
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                          :

In re                          :        **Chapter 11**
                          :

**BREITBURN ENERGY**      :        **Case No. 16-11390 (SMB)**
**PARTNERS LP,** *et al.,*    :
                          :        **(Jointly Administered)**
       **Debtors.**[1]     :
                          :
---------------------------------------------------------x

### NOTICE OF MOTION OF DEBTORS
### PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364,
### FED. R. BANKR. P. 4001, AND LOCAL RULES 4001-1 AND 4001-2
### FOR AUTHORITY TO, INTER ALIA, AMEND AND EXTEND EXISTING
### POSTPETITION FINANCING ARRANGEMENTS AND RELATED RELIEF

      **PLEASE TAKE NOTICE** that a hearing on the annexed Motion (the "**Motion**"),

dated December 1, 2016, of Breitburn Energy Partners LP and its affiliated debtors in the above-

captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"),

for entry of an order pursuant to sections 105, 361, 362, 363, and 364 of the Bankruptcy Code,

Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Breitburn Energy Partners LP (9953); Breitburn GP LLC (9948); Breitburn Operating LP (5529); Breitburn Operating GP LLC (5525); Breitburn Management Company LLC (2858); Breitburn Finance Corporation (2548); Alamitos Company (9156); Beaver Creek Pipeline, L.L.C. (7887); Breitburn Florida LLC (7424); Breitburn Oklahoma LLC (4714); Breitburn Sawtelle LLC (7661); Breitburn Transpetco GP LLC (7222); Breitburn Transpetco LP LLC (7188); GTG Pipeline LLC (3760); Mercury Michigan Company, LLC (3380); Phoenix Production Company (1427); QR Energy, LP (3069); QRE GP, LLC (2855); QRE Operating, LLC (9097); Terra Energy Company LLC (9616); Terra Pipeline Company LLC (3146); and Transpetco Pipeline Company, L.P. (2620). The Debtors' mailing address is 707 Wilshire Boulevard, Suite 4600, Los Angeles, California 90017.

4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") approving and authorizing, among other things, the Debtors' entry into an amendment to their Debtor-in-Possession Credit Facility, will be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 723, One Bowling Green, New York, NY 10004 (the "**Bankruptcy Court**"), on **December 15, 2016 at 10:00 a.m. (Eastern Time)** (the "**Hearing**").

        **PLEASE TAKE FURTHER NOTICE** that any responses or objections ("**Objections**") to the Motion must be in writing, shall conform to the Bankruptcy Rules and the Local Rules, and shall be filed with the Bankruptcy Court (a) by registered users of the Bankruptcy Court's case filing system, electronically in accordance with General Order M–399 (which can be found at http://www.nysb.uscourts.gov), and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M–399, to the extent applicable, and served on:

(a) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, NY 10153 (Attn: Ray C. Schrock, P.C. and Stephen Karotkin, Esq.);

(b) Winston & Strawn LLP, attorneys for the DIP Agent and the RBL Agent, 333 S. Grand Avenue, 38th Floor, Los Angeles, CA 90071-1543 (Attn. Eric E. Sagerman, Esq. and Justin E. Rawlins, Esq.) and 200 Park Avenue, New York, NY 10166 (Attn: David Neier, Esq. and Carey D. Schreiber, Esq.);

(c) Kirkland & Ellis LLP, attorneys for the Second Lien Noteholder Group, 601 Lexington Avenue New York, New York 10022-4611 (Attn: Christopher J. Marcus and Jonathan S. Henes);

(d) Foley & Lardner LLP, attorneys for the Second Lien Indenture Trustee, 321 North Clark Street, Suite 2800, Chicago, IL 60654-5313 (Attn: Mark F. Hebbeln and Lars A. Peterson);

(e)  Milbank, Tweed, Hadley & McCloy LLP, attorneys for the Official Committee of Unsecured Creditors, 2029 Century Park East, 33rd Floor, Los Angeles, CA 90067 (Attn: Gregory Bray, Esq. and Paul Aronzon, Esq.);

(f)  Proskauer Rose LLP, proposed attorneys for the Official Committee of Equity Security Holders, Eleven Times Square, New York, NY 10036 (Attn: Martin J. Bienenstock, Esq.); and

(g)  the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Susan D. Golden, Esq. and Richard C. Morrissey, Esq.)

so as to be filed and received no later than **December 8, 2016 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard.

PLEASE TAKE FURTHER NOTICE that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 1, 2016
New York, New York

/s/ Stephen Karotkin
Ray C. Schrock, P.C.
Stephen Karotkin
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Debtors*
*and Debtors in Possession*

HEARING DATE AND TIME: December 15 at 10:00 a.m. (Eastern Time)
OBJECTION DEADLINE: December 8 at 4:00 p.m. (Eastern Time)

Ray C. Schrock, P.C.
Stephen Karotkin
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
: 
In re : 
:    **Chapter 11**
**BREITBURN ENERGY** : 
**PARTNERS LP,** *et al.*, :    **Case No. 16-11390 (SMB)**
: 
Debtors.[1] :    **(Jointly Administered)**
: 
---------------------------------------------------------x

## MOTION OF DEBTORS PURSUANT
## TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364, FED. R.
## BANKR. P. 4001, AND LOCAL RULES 4001-1 AND 4001-2 FOR
## AUTHORITY TO, INTER ALIA, AMEND AND EXTEND EXISTING
## <u>POSTPETITION FINANCING ARRANGEMENTS AND RELATED RELIEF</u>

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Breitburn Energy Partners LP (9953); Breitburn GP LLC (9948); Breitburn Operating LP (5529); Breitburn Operating GP LLC (5525); Breitburn Management Company LLC (2858); Breitburn Finance Corporation (2548); Alamitos Company (9156); Beaver Creek Pipeline, L.L.C. (7887); Breitburn Florida LLC (7424); Breitburn Oklahoma LLC (4714); Breitburn Sawtelle LLC (7661); Breitburn Transpetco GP LLC (7222); Breitburn Transpetco LP LLC (7188); GTG Pipeline LLC (3760); Mercury Michigan Company, LLC (3380); Phoenix Production Company (1427); QR Energy, LP (3069); QRE GP, LLC (2855); QRE Operating, LLC (9097); Terra Energy Company LLC (9616); Terra Pipeline Company LLC (3146); and Transpetco Pipeline Company, L.P. (2620). The Debtors' mailing address is 707 Wilshire Boulevard, Suite 4600, Los Angeles, California 90017.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Breitburn Energy Partners LP ("**BBEP**") and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):[2]

### Overview of the Proposed Amended DIP Facility[3]

1.     Pursuant to this Motion, the Debtors seek authority to amend their existing postpetition revolving loan facility (the "**Existing DIP Facility**") pursuant to that certain First Amendment to Debtor-in-Possession Credit Agreement substantially in the form annexed hereto as **Exhibit A** (the "**Amendment**") that, among other things, (i) extends the Existing DIP Facility's scheduled maturity date to June 30, 2017; (ii) increases certain pricing; (iii) increases the Committed Amount from $75 million to $150 million and increases the Letter of Credit Sublimit from $50 million to $100 million; and (iv) provides for the payment of certain fees to the agent and lenders (in such capacities, the "**DIP Agent**" and "**DIP Lenders**," respectively) in consideration for the extension.  A proposed order approving the Amendment is annexed hereto as **Exhibit B** (the "**Proposed Order**").    The Existing DIP Facility, as amended by the Amendment, is hereinafter referred to as the "**Amended DIP Facility**."

2.     The Amended DIP Facility continues the terms of the Existing DIP Facility (except as expressly modified by the Amendment) and has been negotiated in good faith and at arms' length.  For the reasons discussed below and presented in connection with the Court's

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Amendment (as defined below) or the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 and Fed. R. Bankr. P. 4001, and Local Rules 4001-1 and 4001-2 for Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Certain Protections to Prepetition Secured Parties, and (D) Related Relief* (ECF No. 5) (the "**Original DIP Motion**"), as applicable.

[3] This summary is qualified in its entirety by reference to the applicable provisions of the Amendment, the DIP Loan Documents, and/or the Proposed Order.  To the extent there are any inconsistencies between this summary and such documents, such documents shall control.

approval of the Existing DIP Facility, the Amended DIP Facility is in the best interests of the Debtors' estates and all economic constituencies in these cases and should be approved by the Court.

3.    The terms of the Existing DIP Facility are set forth in: (i) the DIP Credit Agreement (ECF No. 73, Ex. A); (ii) the Order approving the Existing DIP Facility on a final basis (ECF No. 431) (the "**Final DIP Order**"); and (iii) the *Stipulation by and Among the Debtors, the Official Committee of Unsecured Creditors, the Second Lien Group, and the Agent for and on Behalf of the First Lien Lenders Extending the Time for the Official Committee of Unsecured Creditors Only to Complete Investigation with Respect to the Second-Lien Noteholders* (ECF No. 758).  In accordance with Bankruptcy Rules 4001(b), (c), and (d) and Rule 4001-2(a) of the Local Rules of Bankruptcy Procedure for the Southern District of New York (the "**Local Rules**"), the following table summarizes the significant terms of the Amended DIP Facility that differ from those currently in effect under the Existing DIP Facility:

| SUMMARY OF AMENDED TERMS IN THE DIP FACILITY | |
|---|---|
| **Borrowing Limits**<br>Fed. R. Bankr. P. 4001(c)(1)(B) | Total DIP Facility of up to $150 million in committed amounts.  Letter of credit sublimit increased from $50 million to $100 million.  (***See* Amendment § 1(b)(iv).**) |
| **Interest Rates**<br>Fed. R. Bankr. P. 4001(c)(1)(B) | Increased in certain cases by a 0.25%–0.75% usage premium based on the total amounts drawn and letters of credit issued, as more fully set forth in the table in paragraph 17 of this Motion, and increased in any case by 0.50% as of April 1, 2017.  (***See* Amendment § 1(b)(i).**) |
| **Expenses and Fees**<br>Local Rule 4001-2(a)(3) | (i) Upfront fee of 0.50% on DIP Lenders' initial $75 million commitment and (ii) upfront fee of 1.00% on additional $75 million commitment.  (***See* Amendment § 3(b).**) |
| **Maturity Date**<br>Fed. R. Bankr. P. 4001(c)(1)(B); Local Rule 4001-2(a)(10) | The Scheduled Maturity Date is extended to June 30, 2017 (from January 15, 2017).  (***See* Amendment § 1(b)(v).**) |
| **Conditions to Closing**<br>Fed. R. Bankr. P. 4001(c)(1)(B); Local Rule 4001-2(a)(2) | Entry of the Proposed Order, payment of fees, absence of defaults, the material accuracy of representations and warranties, and delivery of the executed Amendment to the DIP Agent.  (***See* Amendment § 3.**) |

WEIL:\95941021\5\29979.0004

## Background

4.       On May 15, 2016 (the "**Petition Date**"), the Debtors each commenced

with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the

"**Bankruptcy Code**").   The Debtors are authorized to continue to operate their business and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.   No trustee or examiner has been appointed in these chapter 11 cases.

5.       These chapter 11 cases are being jointly administered for procedural

purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**").

6.       On May 26, 2016, the United States Trustee for Region 2 (the "**U.S.

Trustee**") appointed the Official Committee of Unsecured Creditors pursuant to section 1102 of

the Bankruptcy Code.   On November 15, 2016, the U.S. Trustee appointed the Official

Committee of Equity Security Holders pursuant to section 1102 of the Bankruptcy Code.

7.       Information regarding the Debtors' business, capital structure, and the

circumstances leading to the commencement of these chapter 11 cases is set forth in the

*Declaration of James G. Jackson Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the*

*Southern District of New York and in Support of the Debtors' Chapter 11 Petitions and First*

*Day Relief* (ECF No. 13) (the "**Jackson Declaration**").

## Jurisdiction

8.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b).   Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4

## Relief Requested

9. By this Motion, the Debtors request entry of the Proposed Order that among other things: (a) approves the Amendment and authorizes the Debtors to enter into the Amended DIP Facility; and (b) authorizes the Debtors to pay the fees provided for in the Amendment.

### The Debtors' Existing DIP Facility
### and the RBL Hedge Proceeds Standstill

10. On May 15, 2016, the Debtors moved for authority to enter into the Existing DIP Facility and use cash collateral with the consent of the Prepetition Secured Parties (ECF No. 5).

11. On May 23, 2016, the Court entered an order approving the Existing DIP Facility and the use of cash collateral on an interim basis (ECF No. 73).

12. On July 19, 2016, the Court entered an order approving certain amendments to the Existing DIP Facility and the use of cash collateral on an interim basis (ECF No. 278).

13. Following a hearing, on August 19, 2016, the Court entered the Final DIP Order (ECF No. 431) approving the Debtors' entry into the Existing DIP Facility and the use of cash collateral on a final basis.

14. Pursuant to the Final DIP Order, the Court, inter alia, authorized the Debtors to borrow up to $150 million under the Existing DIP Facility, which is a revolving credit facility that provides for $75 million of committed loans and a commitment by the DIP Agent to arrange an additional $75 million of loans upon the Debtors' request for such additional loans. (Final DIP Order ¶ 6(b).)  The interest rates under the Existing DIP Facility are, depending on the Debtors' chosen index rate for a particular borrowing, either the Base Rate (as defined in the

WEIL:\95941021\5\29979.0004

DIP Credit Agreement) plus 4.75% or LIBOR plus 5.75%. The Existing DIP Facility is scheduled to mature on January 15, 2017.

15. In addition to the foregoing, and as more fully set forth in the Existing DIP Facility and the Final DIP Order:

a. The DIP Obligations constitute superpriority administrative expense claims (Final DIP Order ¶ 11(a));

b. The DIP Obligations are secured by first priority liens on all of the Debtors' assets and properties, subject only to certain exceptions set forth in the Existing DIP Facility and the Final DIP Order (*id.* ¶ 11(b));

c. The Debtors granted the Prepetition Secured Parties certain Adequate Protection Liens and adequate protection claims and as additional adequate protection agreed to pay, inter alia, interest and fees and expenses under the RBL Credit Documents and the professional fees of the Second Lien Noteholder Group (id. ¶ 20).

16. The Final DIP Order also provides in Paragraph 23 for a standstill period during which the Debtors and the RBL Lender Derivative Providers have agreed to the maintenance of the status quo with respect to the RBL Hedge Proceeds, pending an effort to consensually resolve the disposition thereof. The Standstill Termination Date with respect to the Standstill Period has been extended from time to time on consent of the parties, with the most recent extension being to March 31, 2017.

## **The Amendment**

17. In view of the upcoming original maturity of the Existing DIP Facility and the fact that the administration of the Debtors' cases obviously will extend beyond that date, the Debtors, DIP Agent, and DIP Lenders engaged in negotiations and have agreed to the Amendment. As stated, the Amendment essentially makes four principal changes to the Existing DIP Facility. <u>First</u>, the Scheduled Maturity Date would be extended from January 15, 2017 to June 30, 2017. <u>Second</u>, the DIP Lenders would commit to fund the additional $75 million of the

6

aggregate $150 million that the Debtors are already authorized to borrow under the Final DIP

Order.  Third, the interest rate structure would change as follows:

| Usage Percentage | Prior to April 1, 2017 | | From and After April 1, 2017 | |
|---|---|---|---|---|
| | LIBOR | Base Rate | LIBOR | Base Rate |
| ≥ 75% | 6.50% | 5.50% | 7.00% | 6.00% |
| < 75% ≥ 50% | 6.25% | 5.25% | 6.75% | 5.75% |
| < 50% ≥ 25% | 6.00% | 5.00% | 6.50% | 5.50% |
| < 25% | 5.75% | 4.75% | 6.25% | 5.25% |

For these purposes, the term "Usage Percentage" means as of any date the total of the amounts

drawn and letters of credit issued under the DIP Credit Facility divided by $150 million.  Fourth,

the Debtors would be required to pay a fee of $375,000 on account of the extension of the DIP

Lenders' existing commitment of $75 million and a fee of $750,000 on the DIP Lenders' upsized

commitment of the additional $75 million.  The only conditions to closing of the Amended DIP

Facility would be the entry of the Proposed Order, the payment of the fees described above, the

absence of defaults, the material accuracy of representations and warranties, and the delivery of

the executed Amendment to the DIP Agent.  The Debtors would also be permitted to continue

using cash collateral in accordance with the Final DIP Order.  All other provisions of the DIP

Credit Agreement and the Final DIP Order, as have been fully described in the Original DIP

Motion and on the record, and as the Court has approved, would remain unchanged.

### Approval of the Amended DIP Facility and the Continued
### Consensual Use of Cash Collateral Are in the Debtors' Best Interests

18.    Continuation of the terms of the Existing DIP Facility, as amended by the

Amendment, and the continued use of cash collateral as provided in the Final DIP Order are in

the Debtors' best interests and essential to the Debtors' reorganization efforts.  The Court has

already approved the Existing DIP Facility.  The financing available under the Amended DIP

Facility is on substantially similar terms and, together with the continued use of cash collateral as

7

provided in the Final DIP Order, would ensure that the Debtors have sufficient liquidity to operate their business and administer their estates during these chapter 11 cases. As stated, it is abundantly clear that the administration of these cases will continue beyond the original Scheduled Maturity Date of the Existing DIP Facility, and the Amendment and the ongoing use of cash collateral will assure that the Debtors will have the liquidity to operate their business enterprise and successfully reorganize as contemplated by chapter 11.

19.      As demonstrated in connection with the approval of the Existing DIP Facility and the entry of the Final DIP Order, the financing provided by the DIP Lenders is the only practical financing available and the terms and costs involved are fair and reasonable. The Amendment serves to keep these arrangements in place and the increase in rate and the fees payable are modest in the context of the extension being granted and the committed increase in the facility. Seeking financing from another source in view of, among other things, the priming fight that would inevitably ensue and without any assurance that better terms would be available, would be disruptive to the Debtors' business enterprise and reorganization effort and would be value destructive. Under these circumstances, the Amendment certainly is in the best interest of the Debtors and all other interested parties.

20.      The Amendment satisfies the requirements of sections 364(c)(3) and (d)(1) of the Bankruptcy Code. Section 364(c) provides that:

> [i]f the [debtor] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and hearing, may authorize the obtaining of credit or the incurring of debt—
>
> (1)      with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code];
>
> (2)      secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3)      secured by a junior lien on property of the estate that is subject to a lien.

8

21.    Under section 364(c), a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis. *Bray v. Shenandoah Fed. Savs. & Loan Ass'n* (*In re Snowshoe Co.*), 789 F.2d 1085, 1088 (4th Cir. 1986). "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.*; *see also Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 584 (S.D.N.Y. 2001) (superpriority administrative expenses authorized where debtor could not obtain credit as an administrative expense). When few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Savs. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also Ames Dep't Stores*, 115 B.R. at 40.

22.    Section 364(d)(1) of the Bankruptcy Code provides that:

[t]he court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A)    the trustee is unable to obtain such credit otherwise; and

(B)    there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

When determining whether to authorize a debtor to obtain credit secured by a lien as authorized by section 364(d) of the Bankruptcy Code, Courts consider a number of factors, focusing on whether the transaction will enhance the value of the Debtors' assets. *See, e.g., Ames Dep't Stores*, 115 B.R. at 37–39; *Bland v. Farmworker Creditors*, 308 B.R. 109, 113-14 (S.D. Ga. 2003); *Farmland Indus.*, 294 B.R. at 862–79, *Lyondell Chem. Co.*, Case No. 09-10023 (Bankr.

WEIL:\95941021\5\29979.0004

S.D.N.Y. March 5, 2009); *Barbara K. Enters.*, 2008 WL 2439649 at *10; *see also* 3 Collier on Bankruptcy ¶ 364.04[1] (15th ed. rev. 2008).

23.    Here, the Court already has approved the Existing DIP Facility (including the entire $150,000,000) and determined that it satisfies the requirements of sections 364(c) and (d) of the Bankruptcy Code.  As stated, the Amendment essentially extends the existing facility, enables the continued consensual use of cash collateral, and avoids the cost, expense and disruption of seeking a replacement facility, particularly where continuation of the existing facility will be on reasonable terms, will avoid costly litigation and will maximize the potential for a successful reorganization.

24.    As a general matter, Courts grant a debtor considerable deference when the debtor exercises reasonable business judgment in obtaining postpetition financing, so long as the proposed financing does not violate the provisions or underlying policies of the Bankruptcy Code.  *See, e.g.*, *In re Barbara K. Enters., Inc.*, Ch. 11 Case No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (reasoning that Courts defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest"); *Ames Dep't Stores*, 115 B.R. at 34 ("[C]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."); *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of postpetition financing requires, among other things, an exercise of "sound and reasonable business judgment").

25.     Here, in light of (i) the Debtors' capital structure; (ii) the fact that substantially all of the Debtors' assets are subject to both prepetition liens and DIP Liens; (iii) the fact that the Court has already approved the Existing DIP Facility and use of cash collateral; and (iv) the ability to preserve the status quo in these cases, the Amendment is plainly beneficial to the Debtors and their estates, constitutes a reasonable and sound exercise of their business judgment, and should be approved.

26.     Section 364(e) of the Bankruptcy Code protects a good faith lender's right to enforce the terms of postpetition loans extended to a debtor, as well as its right to enforce any postpetition lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal.  Specifically, section 364(e) provides that:

> [t]he reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

27.     Here, the negotiations of the Amendment were conducted in good faith and at arms' length.  The terms and provisions of the Amended DIP Facility, like those of the Existing DIP Facility, are fair and reasonable, and the proceeds of the Amended DIP Facility, like those of the Existing DIP Facility, will be used only for purposes that are permissible under the provisions and underlying policies of the Bankruptcy Code.  Accordingly, the Debtors believe the DIP Lenders continue to constitute good faith lenders within the meaning of section 364(e) of the Bankruptcy Code and are entitled to the continued protections thereof.

11

### Waiver of Bankruptcy Rules 6004(a) and (h)

28.     To implement the foregoing successfully, the Debtors seek a waiver of the

notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order

authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

WHEREFORE the Debtors respectfully request entry of the Proposed Order

granting the relief requested herein and such other and further relief as is just.

Dated:  December 1, 2016
        New York, New York

                            /s/ Stephen Karotkin
                            Ray C. Schrock, P.C.
                            Stephen Karotkin
                            **WEIL, GOTSHAL & MANGES LLP**
                            767 Fifth Avenue
                            New York, New York  10153
                            Telephone:  (212) 310-8000
                            Facsimile:  (212) 310-8007

                            *Proposed Attorneys for Debtors*
                            *and Debtors in Possession*

WEIL:\95941021\5\29979.0004

## Exhibit A

**Amendment to DIP Credit Facility**

## FIRST AMENDMENT TO
## DEBTOR-IN-POSSESSION CREDIT AGREEMENT

THIS FIRST AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT (hereinafter called this "*Amendment*") is dated effective as of December 15, 2016, by and among BREITBURN OPERATING LP, a Delaware limited partnership (the "*Company*"), BREITBURN ENERGY PARTNERS LP, a Delaware limited partnership ("*Parent*"), the other Guarantors, each Lender signatory hereto, and WELLS FARGO BANK, NATIONAL ASSOCIATION, as administrative agent for the Lenders (in such capacity, together with its successors in such capacity "*Administrative Agent*"). Capitalized terms used in this Amendment, and not otherwise defined in this Amendment, have the meanings assigned thereto in the Credit Agreement defined below. The Credit Agreement, as amended by this Amendment, and as may be further amended, restated or modified from time to time, is hereinafter called the "Agreement".

## W I T N E S S E T H:

WHEREAS, the Company, Parent, Administrative Agent and the Lenders are parties to that certain Debtor-In-Possession Credit Agreement dated as of May 19, 2016 (the "*Credit Agreement*"), whereby upon the terms and conditions therein stated the Lenders have agreed to make certain loans to the Company and issue Letters of Credit on behalf of the Company and its Subsidiaries;

WHEREAS, the Guarantors have agreed to guarantee the Obligations of the Company and the Company and the Guarantors have agreed to secure all of the Obligations by granting to the Administrative Agent, for the benefit of the Secured Parties, a Lien on substantially all of their respective assets, in each case, in accordance with the terms and provisions of the Agreement and the Final Order;

WHEREAS, the Company requests that the Administrative Agent and the Lenders amend the Credit Agreement as set forth in Section 1 below; and

WHEREAS, subject to the terms hereof, the Administrative Agent and the Lenders agree to the amendments to the Credit Agreement as set forth herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and agreements herein contained, the parties to this Amendment hereby agree as follows:

**SECTION 1. Amendments to Credit Agreement.** Effective as of the Amendment Effective Date, the Credit Agreement is hereby amended as follows:

(a)    New Definitions. The following definitions are hereby added to *Section 1.01* of the Credit Agreement in proper alphabetical order:

"*First Amendment Effective Date*" means the "Amendment Effective Date" as such term is defined in that certain First Amendment to Debtor-In-Possession Credit

WEIL:\95952458\1\29979.0004

Agreement dated as of December 15, 2016, by and among the Company, the other Loan Parties party thereto, the Administrative Agent, and the Lenders party thereto.

"***Usage Percentage***" means, as of any date, the quotient, expressed as a percentage, of (a) the Effective Amount on such date, divided by (b) the Commitment Amount on such date.

(b)    <u>Amendments to Definitions.</u> The following definitions in ***Section 1.01*** of the Credit Agreement are hereby amended as follows:

(i)    The definition of "***Applicable Margin***" is hereby amended and restated in its entirety to read as follows:

"***Applicable Margin***" means on any date from and after the First Amendment Effective Date, the rates per annum set forth below, based upon the Usage Percentage on such date:

| Usage Percentage | Prior to April 1, 2017 | | From and After April 1, 2017 | |
|---|---|---|---|---|
| | LIBOR | Base Rate | LIBOR | Base Rate |
| $\geq 75\%$ | 6.50% | 5.50% | 7.00% | 6.00% |
| $< 75\% \geq 50\%$ | 6.25% | 5.25% | 6.75% | 5.75% |
| $< 50\% \geq 25\%$ | 6.00% | 5.00% | 6.50% | 5.50% |
| $< 25\%$ | 5.75% | 4.75% | 6.25% | 5.25% |

The Applicable Margin for any such date shall be determined by reference to the Usage Percentage on such date and any change in the Applicable Margin shall become effective immediately upon any change in the Usage Percentage as of the end of such date.

(ii)    The definition of "***Commitment Amount***" is hereby amended and restated in its entirety as follows:

"***Commitment Amount***" means the aggregate commitments of all Lenders, as set forth on ***Schedule 2.01***, as such commitments may be increased, terminated, reduced and/or reallocated from time to time pursuant to the terms hereof.  The Commitment Amount on the Interim Facility Effective Date is $75,000,000.  The Commitment Amount on the First Amendment Effective Date is $150,000,000.

(iii)    The definitions of "***Incremental Facility***" and "***New Lender***" are hereby deleted.

(iv)    The definition of "***Letter of Credit Sublimit***" is hereby amended and restated in its entirety as follows:

"***Letter of Credit Sublimit***" means, as of any date of determination, an amount equal to the lesser of (a) $100,000,000 and (b) the Commitment Amount in effect on such date.

(v)    The definition of "***Scheduled Maturity Date***" is hereby amended and restated in its entirety as follows:

WEIL:\95952458\1\29979.0004

*First Amendment*

"*Scheduled Maturity Date*" means June 30, 2017.

(c)     *Section 2.15* of the Credit Agreement is hereby deleted.

(d)     *Schedule 2.01* to the Credit Agreement is hereby amended, restated and replaced by the *Schedule 2.01* attached hereto.

### SECTION 2.  Guarantor Confirmation.

(a)     The Guarantors hereby consent and agree to this Amendment and each of the transactions contemplated hereby.

(b)     Each of the Company and the Guarantors ratifies and confirms as of the date hereof its applicable debts, duties, obligations, liabilities, pledge of its Collateral and grant of security interests and liens in its Collateral, in each case, existing by virtue of the Final Order and the terms and provisions of the Loan Documents to which it is a party.

(c)     Subject to the Chapter 11 Cases, each of the Company and the Guarantors agrees as of the date hereof that its applicable guarantee, pledge of its Collateral, grant of security interests and liens in its Collateral, and other obligations, and the terms of each of the Security Documents and Guaranties to which it is a party, are not impaired, released, diminished or reduced in any manner whatsoever and shall continue to be in full force and effect and shall continue to secure all Obligations in accordance with the terms of each of the Security Documents and Guaranties.

(d)     Each of the Company and the Guarantors acknowledges and agrees as of the date hereof that all terms, provisions, and conditions of the Loan Documents to which it is a party (as amended by this Amendment) shall continue in full force and effect and shall remain enforceable and binding against such Person in accordance with their respective terms, subject to applicable bankruptcy, insolvency, or similar laws affecting creditors' rights generally and general equitable principles.

### SECTION 3.  Conditions of Effectiveness.  This Amendment and the amendments hereunder shall become effective as of the date first set forth above (the "*Amendment Effective Date*"), provided that the following conditions shall have been satisfied:

(a)     Amendment. The Administrative Agent shall have received a counterpart of this Amendment which shall have been executed by the Administrative Agent, the Issuing Lender, each Lender, the Company, and the Guarantors (which may be by telecopy or PDF transmission as set forth in Section 8).

(b)     Payment of Fees. The Administrative Agent shall have received (i) a fee, for the ratable benefit of each Lender (other than any Defaulting Lender) party to the Agreement immediately prior to the Amendment Effective Date, equal to 0.50% of the Commitment of such Lender in effect immediately prior to the Amendment Effective Date, and (ii) a fee, for the ratable benefit of each Lender (other than any Defaulting Lender) party to the Agreement that is increasing its Commitment on the Amendment Effective Date pursuant to this Amendment, in an amount equal to 1.00% of the amount of such Lender's Commitment so increased on the

Amendment Effective Date pursuant to this Amendment.

(c)    <u>No Default; Representations and Warranties.</u> At the time of the Amendment Effective Date and immediately after giving effect to this Amendment:

(i)    the representations and warranties of the Company and the Guarantors in *Article VI* of the Credit Agreement and in the other Loan Documents as amended hereby shall be true and correct in all material respects (except to the extent such representations and warranties expressly refer to an earlier date, in which case they shall be true and correct in all material respects as of such earlier date, and except that the representations and warranties contained in subsections (a) and (b) of Section 6.14 of the Agreement shall be deemed to refer to the most recent statements furnished pursuant to subsections (a) and (b) of Section 7.01); and

(ii)    no Default or Event of Default shall exist.

(d)    <u>Bankruptcy Court Approval.</u> The Bankruptcy Court shall have approved this Amendment pursuant to an order in form and substance satisfactory to the Administrative Agent.

**SECTION 4. <u>Representations and Warranties</u>**. Each of the Company and the Guarantors represent and warrant to Administrative Agent and the Lenders, with full knowledge that such Persons are relying on the following representations and warranties in executing this Amendment, as follows:

(a)    Subject to the Final Order and subject to any restrictions arising on account of any Loan Party's status as a "debtor" under the Bankruptcy Code, such Loan Party has the organizational power and authority to execute, deliver and perform this Amendment, and all organizational action on the part of such Loan Party requisite for the due execution, delivery and performance of this Amendment has been duly and effectively taken.

(b)    Subject to the Final Order, the Agreement, the Loan Documents and each and every other Loan Document executed and delivered by such Loan Party in connection with this Amendment constitute the legal, valid and binding obligations of it, to the extent it is a party thereto, enforceable against such Person in accordance with their respective terms except as enforceability may be limited by applicable bankruptcy, insolvency, or similar laws affecting the enforcement of creditors' rights generally or by equitable principles relating to enforceability.

(c)    This Amendment does not and will not violate any provisions of any of such Loan Party's Organization Documents.

(d)    Subject to the entry of an order of the Bankruptcy Court in connection herewith, no approval, consent, exemption, authorization, or other action by, or notice to, or filing with, any Governmental Authority is necessary or required in connection with the execution, delivery or performance by, or enforcement against, any Loan Party of this Amendment other than routine filings related to the Loan Parties and the operation of their business and other than filings with the Bankruptcy Court and such other filings as may be necessary in connection with Lenders' exercise of its remedies hereunder.

WEIL:\95952458\1\29979.0004

(e)     Immediately after giving effect to this Amendment, no Default or Event of Default will exist, and all of the representations and warranties contained in the Agreement and in the other Loan Documents are true and correct in all material respects on and as of this date (except to the extent such representations and warranties expressly refer to an earlier date, in which case they shall be true and correct in all material respects as of such earlier date, and except that the representations and warranties contained in subsections (a) and (b) of Section 6.14 of the Agreement shall be deemed to refer to the most recent statements furnished pursuant to subsections (a) and (b) of Section 7.01).

**SECTION 5.  <u>Reference to and Effect on the Credit Agreement</u>**.

(a)     Upon the effectiveness hereof, on and after the date hereof, each reference in the Credit Agreement to "this Agreement," "hereunder," "hereof," "herein," or words of like import, shall mean and be a reference to the Credit Agreement as amended hereby.

(b)     Except as specifically amended by this Amendment, the Credit Agreement shall remain in full force and effect and is hereby ratified and confirmed.

**SECTION 6.  <u>Extent of Amendments</u>**. Except as otherwise expressly provided herein, the Credit Agreement and the other Loan Documents are not amended, modified or affected by this Amendment. Each of the Company and the Guarantors hereby ratifies and confirms that (i) except as expressly amended hereby and subject to the Chapter 11 Cases, all of the terms, conditions, covenants, representations, warranties and all other provisions of the Credit Agreement remain in full force and effect, (ii) each of the other Loan Documents are and remain in full force and effect in accordance with their respective terms, and (iii) the Collateral and the Liens on the Collateral securing the Obligations are unimpaired by this Amendment and remain in full force and effect.

**SECTION 7.  <u>Loan Documents</u>**. The Loan Documents, as such may be amended in accordance herewith, are and remain legal, valid and binding obligations of the parties thereto, enforceable in accordance with their respective terms. This Amendment is a Loan Document.

**SECTION 8.  <u>Execution and Counterparts</u>**. This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. Delivery of an executed counterpart of this Amendment by facsimile or pdf shall be equally as effective as delivery of a manually executed counterpart.

**SECTION 9.  <u>Governing Law</u>**. This Amendment shall be governed by and construed in accordance with the laws of the State of New York and applicable federal laws of the United States of America.

**SECTION 10.     <u>Headings</u>**. Section headings in this Amendment are included herein for convenience and reference only and shall not constitute a part of this Amendment for any other purpose.

SECTION 11.        <u>NO ORAL AGREEMENTS</u>. **THIS WRITTEN AMENDMENT, TOGETHER WITH THE OTHER WRITTEN LOAN DOCUMENTS EXECUTED IN CONNECTION HEREWITH, REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.** THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN SUCH PARTIES.

SECTION 12.        **No Waiver.** Each of the Company and Guarantors hereby agree that no event of Default and no Default has been waived or remedied by the execution of this Amendment by the Administrative Agent or any Lender. Nothing contained in this Amendment nor any past indulgence by the Administrative Agent, Issuing Lender or any Lender, nor any other action or inaction on behalf of the Administrative Agent, Issuing Lender or any Lender, (i) shall constitute or be deemed to constitute a waiver of any Defaults or Events of Default which may exist under the Agreement or the other Loan Documents, or (ii) shall constitute or be deemed to constitute an election of remedies by the Administrative Agent, Issuing Lender or any Lender, or a waiver of any of the rights or remedies of the Administrative Agent, Issuing Lender or any Lender provided in the Agreement, the other Loan Documents, or otherwise afforded at law or in equity.

*[Signature Pages Follow]*

---

6

*First Amendment*

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

<b><u>LOAN PARTIES:</u></b>

**BREITBURN OPERATING LP**

    By:  **BREITBURN OPERATING GP LLC,** its general partner

By:_____
Name: James G. Jackson
Title:  Chief Financial Officer

**BREITBURN ENERGY PARTNERS LP**

    By:  **BREITBURN GP LLC,** its general partner

By:_____
Name: James G. Jackson
Title:  Chief Financial Officer

**BREITBURN GP LLC**
**BREITBURN OPERATING GP LLC**
**BREITBURN FINANCE CORPORATION**
**ALAMITOS COMPANY**
**BEAVER CREEK PIPELINE, L.L.C.**
**PHOENIX PRODUCTION COMPANY**
**GTG PIPELINE LLC**
**MERCURY MICHIGAN COMPANY, LLC**
**TERRA ENERGY COMPANY LLC**
**TERRA PIPELINE COMPANY LLC**

By:_____
Name: James G. Jackson
Title:  Chief Financial Officer

**BREITBURN MANAGEMENT COMPANY LLC**

By: **BREITBURN ENERGY PARTNERS LP,** its sole member
By: **BREITBURN GP LLC,** its general partner

By: _____
Name: James G. Jackson
Title: Chief Financial Officer

**BREITBURN FLORIDA LLC**
**BREITBURN OKLAHOMA LLC**
**BREITBURN SAWTELLE LLC**
**BREITBURN TRANSPETCO GP LLC**
**BREITBURN TRANSPETCO LP LLC**

By: **BREITBURN OPERATING LP,** its sole member
By: **BREITBURN OPERATING GP LLC,** its general partner

By: _____
Name: James G. Jackson
Title:  Chief Financial Officer

---

**TRANSPETCO PIPELINE COMPANY, L.P.**

By: **BREITBURN TRANSPETCO GP LLC,** its general partner
By: **BREITBURN OPERATING LP,** its sole member
By: **BREITBURN OPERATING GP LLC**, its general partner

By: _____
Name: James G. Jackson
Title:  Chief Financial Officer

By: **BREITBURN OPERATING LP,** its sole member
By: **BREITBURN OPERATING GP LLC**, its general partner

By: _____
Name: James G. Jackson
Title:  Chief Financial Officer

**QR ENERGY, LP**
By: **QRE GP, LLC**, its general partner

By: _____
Name: James G. Jackson
Title: Chief Financial Officer

**QRE GP, LLC**
By: **BREITBURN GP LLC,** its manager

By: _____
Name: James G. Jackson
Title: Chief Financial Officer

**QRE OPERATING, LLC**
By: **QR ENERGY, LP,** its sole member
By: **QRE GP, LLC,** its general partner

By: _____
Name: James G. Jackson
Title: Chief Financial Officer

---

*Signature Page to First Amendment*

**WELLS FARGO BANK, NATIONAL ASSOCIATION** as Administrative Agent and a Lender


By:_____
Name:
Title:

**CITIBANK, N.A.,**
as a Lender


By:_____
Name:
Title:

---

*Signature Page to First Amendment*

**JP MORGAN CHASE BANK, N.A.**
as a Lender


By: _____
Name:
Title:

---

*Signature Page to First Amendment*

**CAPITAL ONE NATIONAL ASSOCIATION**
as a Lender

By: _____

Name:

Title:

---

*Signature Page to First Amendment*

## Exhibit B

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re                                                    :        Chapter 11
                                                         :
**BREITBURN ENERGY PARTNERS LP, _et al._,**[1]           :        Case No. 16-11390 (SMB)
                                                         :        (Jointly Administered)
                              Debtors.                   :
                                                         :        Re: Docket Nos. 5, 6, 29, 54, 55, 73,
                                                         :        246, 247, _____
---------------------------------------------------------------x

**FIRST AMENDMENT TO FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY
FINANCING, (II) AUTHORIZING THE DEBTORS' LIMITED USE OF
CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO THE
PREPETITION SECURED PARTIES, AND (IV) GRANTING RELATED RELIEF**

Upon the motion of Breitburn Energy Partners, LP and its affiliated debtors in the above-

captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"),

dated December 1, 2016 (the "Motion"), pursuant to sections 105, 361, 362, 363, and 364 of the

Bankruptcy Code for entry an order, _inter alia_, authorizing the Debtors to enter into that certain

First Amendment to the DIP Credit Agreement substantially in the form annexed hereto as

Exhibit 1,[2] all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, as applicable, are: Breitburn Energy Partners LP (9953); Breitburn GP LLC (9948); Breitburn Operating LP
(5529); Breitburn Operating GP LLC (5525); Breitburn Management Company LLC (2858); Breitburn Finance
Corporation (2548); Alamitos Company (9156); Beaver Creek Pipeline, L.L.C. (7887); Breitburn Florida LLC
(7424); Breitburn Oklahoma LLC (4714); Breitburn Sawtelle LLC (7661); Breitburn Transpetco GP LLC (7222);
Breitburn Transpetco LP LLC (7188); GTG Pipeline LLC (3760); Mercury Michigan Company, LLC (3380);
Phoenix Production Company (1427); QR Energy, LP (3069); QRE GP, LLC (2855); QRE Operating, LLC (9097);
Terra Energy Company LLC (9616); Terra Pipeline Company LLC (3146); and Transpetco Pipeline Company, L.P.
(2620).  The Debtors' mailing address is 707 Wilshire Boulevard, Suite 4600, Los Angeles, California 90017.

[2] Capitalized termed used but not otherwise defined herein shall have the meanings ascribed to such terms in the
_Final Order pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507, Bankruptcy Rules 2002, 4001, 6004 And
9014 and Local Bankruptcy Rule 4001-2 (I) Authorizing the Debtors to Obtain Postpetition Senior Secured
Superpriority Financing, (II) Authorizing the Debtors' Limited use of Cash Collateral, (III) Granting Adequate
Protection to the Prepetition Secured Parties, and (IV) Granting Related Relief_ entered on August 19, 2016 [Docket
No. 431] (the "Final DIP Order").

1334 and the Amended Standing Order of Reference M-431 (Jan. 31, 2012) (Preska, C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion being adequate and appropriate, and it appearing

that no other or further notice need be provided; and a hearing having been held to consider the

relief requested in the Motion (the "Hearing"); and upon the record of the Hearing, and all

proceedings had before the Court; and the Court having found and determined that the relief

sought in the Motion is necessary and in the best interests of the Debtors' estates, their creditors,

and all other parties in interest, and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and any objections to the requested relief having

been withdrawn or overruled on the merits; and after due deliberation and sufficient cause

appearing therefor, it is hereby **ORDERED**:

1.      The Motion is granted as provided herein.

2.      The Debtors are hereby authorized to enter into and perform their obligations

under the First Amendment to the DIP Credit Agreement.

3.      Each and every provision of the Final DIP Order and the DIP Documents shall

remain unchanged except as amended by: (i) the First Amendment to the DIP Credit

Agreement; (ii) this Order; (iii) the *So Ordered Stipulation by and among the Debtors, the*

*Official Committee Of Unsecured Creditors, the Second Lien Group, and the Agent for and on*

*behalf of the First Lien Lenders Extending the Time for the Official Committee of Unsecured*

*Creditors only to Complete Investigation with respect to the Second-Lien Noteholders* entered

on November 17, 2016 [Docket No. 758]; and (iv) the executed agreements of the Debtors and

the RBL Agent to extend the Standstill Termination Date referenced in sub-paragraph (c) of

Paragraph 23(a) of the Final DIP Order.

4.  The notice provided by the Debtors of the Motion and the relief requested therein constitutes due and sufficient notice thereof.

5.  The requirements of Bankruptcy Rule 6004(h) are waived, and this Order shall be immediately effective and enforceable upon its entry.

6.  The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

7.  The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

New York, New York
Dated: _____

 

_____
United States Bankruptcy Judge

## **<u>Exhibit 1</u>**

Amendment to DIP Credit Agreement

**FIRST AMENDMENT TO**
**DEBTOR-IN-POSSESSION CREDIT AGREEMENT**

THIS FIRST AMENDMENT TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT (hereinafter called this "*Amendment*") is dated effective as of December 15, 2016, by and among BREITBURN OPERATING LP, a Delaware limited partnership (the "*Company*"), BREITBURN ENERGY PARTNERS LP, a Delaware limited partnership ("*Parent*"), the other Guarantors, each Lender signatory hereto, and WELLS FARGO BANK, NATIONAL ASSOCIATION, as administrative agent for the Lenders (in such capacity, together with its successors in such capacity "*Administrative Agent*"). Capitalized terms used in this Amendment, and not otherwise defined in this Amendment, have the meanings assigned thereto in the Credit Agreement defined below. The Credit Agreement, as amended by this Amendment, and as may be further amended, restated or modified from time to time, is hereinafter called the "Agreement".

## W I T N E S S E T H:

WHEREAS, the Company, Parent, Administrative Agent and the Lenders are parties to that certain Debtor-In-Possession Credit Agreement dated as of May 19, 2016 (the "*Credit Agreement*"), whereby upon the terms and conditions therein stated the Lenders have agreed to make certain loans to the Company and issue Letters of Credit on behalf of the Company and its Subsidiaries;

WHEREAS, the Guarantors have agreed to guarantee the Obligations of the Company and the Company and the Guarantors have agreed to secure all of the Obligations by granting to the Administrative Agent, for the benefit of the Secured Parties, a Lien on substantially all of their respective assets, in each case, in accordance with the terms and provisions of the Agreement and the Final Order;

WHEREAS, the Company requests that the Administrative Agent and the Lenders amend the Credit Agreement as set forth in Section 1 below; and

WHEREAS, subject to the terms hereof, the Administrative Agent and the Lenders agree to the amendments to the Credit Agreement as set forth herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and agreements herein contained, the parties to this Amendment hereby agree as follows:

**SECTION 1.** **Amendments to Credit Agreement**. Effective as of the Amendment Effective Date, the Credit Agreement is hereby amended as follows:

(a)  New Definitions. The following definitions are hereby added to *Section 1.01* of the Credit Agreement in proper alphabetical order:

"*First Amendment Effective Date*" means the "Amendment Effective Date" as such term is defined in that certain First Amendment to Debtor-In-Possession Credit

Agreement dated as of December 15, 2016, by and among the Company, the other Loan Parties party thereto, the Administrative Agent, and the Lenders party thereto.

"***Usage Percentage***" means, as of any date, the quotient, expressed as a percentage, of (a) the Effective Amount on such date, divided by (b) the Commitment Amount on such date.

(b)    <u>Amendments to Definitions.</u> The following definitions in ***Section 1.01*** of the Credit Agreement are hereby amended as follows:

(i)    The definition of "***Applicable Margin***" is hereby amended and restated in its entirety to read as follows:

"***Applicable Margin***" means on any date from and after the First Amendment Effective Date, the rates per annum set forth below, based upon the Usage Percentage on such date:

| Usage Percentage | Prior to April 1, 2017 | | From and After April 1, 2017 | |
|---|---|---|---|---|
| | LIBOR | Base Rate | LIBOR | Base Rate |
| ≥ 75% | 6.50% | 5.50% | 7.00% | 6.00% |
| < 75% ≥ 50% | 6.25% | 5.25% | 6.75% | 5.75% |
| < 50% ≥ 25% | 6.00% | 5.00% | 6.50% | 5.50% |
| < 25% | 5.75% | 4.75% | 6.25% | 5.25% |

The Applicable Margin for any such date shall be determined by reference to the Usage Percentage on such date and any change in the Applicable Margin shall become effective immediately upon any change in the Usage Percentage as of the end of such date.

(ii)    The definition of "***Commitment Amount***" is hereby amended and restated in its entirety as follows:

"***Commitment Amount***" means the aggregate commitments of all Lenders, as set forth on ***Schedule 2.01***, as such commitments may be increased, terminated, reduced and/or reallocated from time to time pursuant to the terms hereof.  The Commitment Amount on the Interim Facility Effective Date is $75,000,000.  The Commitment Amount on the First Amendment Effective Date is $150,000,000.

(iii)    The definitions of "***Incremental Facility***" and "***New Lender***" are hereby deleted.

(iv)    The definition of "***Letter of Credit Sublimit***" is hereby amended and restated in its entirety as follows:

"***Letter of Credit Sublimit***" means, as of any date of determination, an amount equal to the lesser of (a) $100,000,000 and (b) the Commitment Amount in effect on such date.

(v)    The definition of "***Scheduled Maturity Date***" is hereby amended and restated in its entirety as follows:

"*Scheduled Maturity Date*" means June 30, 2017.

(c)      *Section 2.15* of the Credit Agreement is hereby deleted.

(d)      *Schedule 2.01* to the Credit Agreement is hereby amended, restated and replaced by the *Schedule 2.01* attached hereto.

### SECTION 2. Guarantor Confirmation.

(a)      The Guarantors hereby consent and agree to this Amendment and each of the transactions contemplated hereby.

(b)      Each of the Company and the Guarantors ratifies and confirms as of the date hereof its applicable debts, duties, obligations, liabilities, pledge of its Collateral and grant of security interests and liens in its Collateral, in each case, existing by virtue of the Final Order and the terms and provisions of the Loan Documents to which it is a party.

(c)      Subject to the Chapter 11 Cases, each of the Company and the Guarantors agrees as of the date hereof that its applicable guarantee, pledge of its Collateral, grant of security interests and liens in its Collateral, and other obligations, and the terms of each of the Security Documents and Guaranties to which it is a party, are not impaired, released, diminished or reduced in any manner whatsoever and shall continue to be in full force and effect and shall continue to secure all Obligations in accordance with the terms of each of the Security Documents and Guaranties.

(d)      Each of the Company and the Guarantors acknowledges and agrees as of the date hereof that all terms, provisions, and conditions of the Loan Documents to which it is a party (as amended by this Amendment) shall continue in full force and effect and shall remain enforceable and binding against such Person in accordance with their respective terms, subject to applicable bankruptcy, insolvency, or similar laws affecting creditors' rights generally and general equitable principles.

### SECTION 3. Conditions of Effectiveness. This Amendment and the amendments hereunder shall become effective as of the date first set forth above (the "*Amendment Effective Date*"), provided that the following conditions shall have been satisfied:

(a)      Amendment. The Administrative Agent shall have received a counterpart of this Amendment which shall have been executed by the Administrative Agent, the Issuing Lender, each Lender, the Company, and the Guarantors (which may be by telecopy or PDF transmission as set forth in Section 8).

(b)      Payment of Fees. The Administrative Agent shall have received (i) a fee, for the ratable benefit of each Lender (other than any Defaulting Lender) party to the Agreement immediately prior to the Amendment Effective Date, equal to 0.50% of the Commitment of such Lender in effect immediately prior to the Amendment Effective Date, and (ii) a fee, for the ratable benefit of each Lender (other than any Defaulting Lender) party to the Agreement that is increasing its Commitment on the Amendment Effective Date pursuant to this Amendment, in an amount equal to 1.00% of the amount of such Lender's Commitment so increased on the

Amendment Effective Date pursuant to this Amendment.

(c)    No Default; Representations and Warranties. At the time of the Amendment Effective Date and immediately after giving effect to this Amendment:

(i)    the representations and warranties of the Company and the Guarantors in *Article VI* of the Credit Agreement and in the other Loan Documents as amended hereby shall be true and correct in all material respects (except to the extent such representations and warranties expressly refer to an earlier date, in which case they shall be true and correct in all material respects as of such earlier date, and except that the representations and warranties contained in subsections (a) and (b) of Section 6.14 of the Agreement shall be deemed to refer to the most recent statements furnished pursuant to subsections (a) and (b) of Section 7.01); and

(ii)    no Default or Event of Default shall exist.

(d)    Bankruptcy Court Approval. The Bankruptcy Court shall have approved this Amendment pursuant to an order in form and substance satisfactory to the Administrative Agent.

**SECTION 4. Representations and Warranties**. Each of the Company and the Guarantors represent and warrant to Administrative Agent and the Lenders, with full knowledge that such Persons are relying on the following representations and warranties in executing this Amendment, as follows:

(a)    Subject to the Final Order and subject to any restrictions arising on account of any Loan Party's status as a "debtor" under the Bankruptcy Code, such Loan Party has the organizational power and authority to execute, deliver and perform this Amendment, and all organizational action on the part of such Loan Party requisite for the due execution, delivery and performance of this Amendment has been duly and effectively taken.

(b)    Subject to the Final Order, the Agreement, the Loan Documents and each and every other Loan Document executed and delivered by such Loan Party in connection with this Amendment constitute the legal, valid and binding obligations of it, to the extent it is a party thereto, enforceable against such Person in accordance with their respective terms except as enforceability may be limited by applicable bankruptcy, insolvency, or similar laws affecting the enforcement of creditors' rights generally or by equitable principles relating to enforceability.

(c)    This Amendment does not and will not violate any provisions of any of such Loan Party's Organization Documents.

(d)    Subject to the entry of an order of the Bankruptcy Court in connection herewith, no approval, consent, exemption, authorization, or other action by, or notice to, or filing with, any Governmental Authority is necessary or required in connection with the execution, delivery or performance by, or enforcement against, any Loan Party of this Amendment other than routine filings related to the Loan Parties and the operation of their business and other than filings with the Bankruptcy Court and such other filings as may be necessary in connection with Lenders' exercise of its remedies hereunder.

*First Amendment*

(e)      Immediately after giving effect to this Amendment, no Default or Event of Default will exist, and all of the representations and warranties contained in the Agreement and in the other Loan Documents are true and correct in all material respects on and as of this date (except to the extent such representations and warranties expressly refer to an earlier date, in which case they shall be true and correct in all material respects as of such earlier date, and except that the representations and warranties contained in subsections (a) and (b) of Section 6.14 of the Agreement shall be deemed to refer to the most recent statements furnished pursuant to subsections (a) and (b) of Section 7.01).

SECTION 5.  **Reference to and Effect on the Credit Agreement**.

(a)      Upon the effectiveness hereof, on and after the date hereof, each reference in the Credit Agreement to "this Agreement," "hereunder," "hereof," "herein," or words of like import, shall mean and be a reference to the Credit Agreement as amended hereby.

(b)      Except as specifically amended by this Amendment, the Credit Agreement shall remain in full force and effect and is hereby ratified and confirmed.

SECTION 6.  **Extent of Amendments**. Except as otherwise expressly provided herein, the Credit Agreement and the other Loan Documents are not amended, modified or affected by this Amendment. Each of the Company and the Guarantors hereby ratifies and confirms that (i) except as expressly amended hereby and subject to the Chapter 11 Cases, all of the terms, conditions, covenants, representations, warranties and all other provisions of the Credit Agreement remain in full force and effect, (ii) each of the other Loan Documents are and remain in full force and effect in accordance with their respective terms, and (iii) the Collateral and the Liens on the Collateral securing the Obligations are unimpaired by this Amendment and remain in full force and effect.

SECTION 7.  **Loan Documents**. The Loan Documents, as such may be amended in accordance herewith, are and remain legal, valid and binding obligations of the parties thereto, enforceable in accordance with their respective terms. This Amendment is a Loan Document.

SECTION 8.  **Execution and Counterparts**. This Amendment may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. Delivery of an executed counterpart of this Amendment by facsimile or pdf shall be equally as effective as delivery of a manually executed counterpart.

SECTION 9.  **Governing Law**. This Amendment shall be governed by and construed in accordance with the laws of the State of New York and applicable federal laws of the United States of America.

SECTION 10.       **Headings**. Section headings in this Amendment are included herein for convenience and reference only and shall not constitute a part of this Amendment for any other purpose.

*First Amendment*

**SECTION 11.**       **NO ORAL AGREEMENTS. THIS WRITTEN AMENDMENT, TOGETHER WITH THE OTHER WRITTEN LOAN DOCUMENTS EXECUTED IN CONNECTION HEREWITH, REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.** THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN SUCH PARTIES.

**SECTION 12.**       **No Waiver.** Each of the Company and Guarantors hereby agree that no event of Default and no Default has been waived or remedied by the execution of this Amendment by the Administrative Agent or any Lender. Nothing contained in this Amendment nor any past indulgence by the Administrative Agent, Issuing Lender or any Lender, nor any other action or inaction on behalf of the Administrative Agent, Issuing Lender or any Lender, (i) shall constitute or be deemed to constitute a waiver of any Defaults or Events of Default which may exist under the Agreement or the other Loan Documents, or (ii) shall constitute or be deemed to constitute an election of remedies by the Administrative Agent, Issuing Lender or any Lender, or a waiver of any of the rights or remedies of the Administrative Agent, Issuing Lender or any Lender provided in the Agreement, the other Loan Documents, or otherwise afforded at law or in equity.

*[Signature Pages Follow]*

---

*First Amendment*

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

**LOAN PARTIES:**

**BREITBURN OPERATING LP**

> By: **BREITBURN OPERATING GP LLC,** its general partner

By:_____
Name: James G. Jackson
Title:  Chief Financial Officer

**BREITBURN ENERGY PARTNERS LP**

> By: **BREITBURN GP LLC,** its general partner

By:_____
Name: James G. Jackson
Title:  Chief Financial Officer

**BREITBURN GP LLC**
**BREITBURN OPERATING GP LLC**
**BREITBURN FINANCE CORPORATION**
**ALAMITOS COMPANY**
**BEAVER CREEK PIPELINE, L.L.C.**
**PHOENIX PRODUCTION COMPANY**
**GTG PIPELINE LLC**
**MERCURY MICHIGAN COMPANY, LLC**
**TERRA ENERGY COMPANY LLC**
**TERRA PIPELINE COMPANY LLC**

By:_____
Name: James G. Jackson
Title:  Chief Financial Officer

**BREITBURN MANAGEMENT COMPANY LLC**

By: **BREITBURN ENERGY PARTNERS LP,** its sole member
By: **BREITBURN GP LLC,** its general partner

By: _____
Name: James G. Jackson
Title: Chief Financial Officer

**BREITBURN FLORIDA LLC**
**BREITBURN OKLAHOMA LLC**
**BREITBURN SAWTELLE LLC**
**BREITBURN TRANSPETCO GP LLC**
**BREITBURN TRANSPETCO LP LLC**

By: **BREITBURN OPERATING LP,** its sole member
By: **BREITBURN OPERATING GP LLC,** its general partner

By: _____
Name: James G. Jackson
Title:  Chief Financial Officer

---

*Signature Page to First Amendment*

**TRANSPETCO PIPELINE COMPANY, L.P.**

> By: **BREITBURN TRANSPETCO GP LLC,** its general partner
> By: **BREITBURN OPERATING LP,** its sole member
> By: **BREITBURN OPERATING GP LLC**, its general partner

By: _____
Name: James G. Jackson
Title:  Chief Financial Officer

> By: **BREITBURN OPERATING LP,** its sole member
> By: **BREITBURN OPERATING GP LLC**, its general partner

By: _____
Name: James G. Jackson
Title:  Chief Financial Officer

**QR ENERGY, LP**
> By: **QRE GP, LLC**, its general partner

By: _____
Name: James G. Jackson
Title: Chief Financial Officer

**QRE GP, LLC**
> By: **BREITBURN GP LLC,** its manager

By: _____
Name: James G. Jackson
Title: Chief Financial Officer

**QRE OPERATING, LLC**
> By: **QR ENERGY, LP,** its sole member
> By: **QRE GP, LLC,** its general partner

By: _____
Name: James G. Jackson
Title: Chief Financial Officer

---

*Signature Page to First Amendment*

**WELLS FARGO BANK, NATIONAL ASSOCIATION** as Administrative Agent and a Lender

By:_____
Name:
Title:

**CITIBANK, N.A.,**
as a Lender


By:_____
Name:
Title:

---

WEIL:\95952458\1\29979.0004

**JP MORGAN CHASE BANK, N.A.**
as a Lender

By: _____
Name:
Title:

*Signature Page to First Amendment*

WEIL:\95952458\1\29979.0004

**CAPITAL ONE NATIONAL ASSOCIATION**
as a Lender

By: _____
Name:
Title:

---

*Signature Page to First Amendment*