**Hearing Date and Time: January 10, 2017 at 10:00 a.m. (Eastern Time)**
**Objection Deadline: January 3, 2017 at 4:00 p.m. (Eastern Time)**

Gregory A. Bray
Paul S. Aronzon (admitted *pro hac vice*)
Haig M. Maghakian (admitted *pro hac vice*)
MILBANK, TWEED, HADLEY & McCLOY LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000

Andrew M. Leblanc
Alexander B. Lees
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500

*Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| **BREITBURN ENERGY PARTNERS LP, *et al.*,** | : | **Case No. 16-11390 (SMB)** |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |
| | : | **Re: D.I. 882, 900, 908** |

**SUPPLEMENTAL STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN RESPONSE TO THE DEBTORS' SECOND MOTION TO EXTEND EXCLUSIVE PERIODS**

The Official Committee of Unsecured Creditors (the "Committee") hereby submits this supplemental statement in response to the *Motion of Debtors Pursuant to 11 U.S.C. § 1121(d) for Further Extension of Exclusive Periods* [D.I. 882] (the "Motion")[1]:

1. The Second Lien Group[2] has filed a statement with respect to the Motion [D.I. 908] (the "Second Lien Statement") that is rife with incorrect statements and mischaracterizations regarding the Committee and the status of the plan negotiations. The Committee therefore submits this supplemental statement in order to further clarify the actual status of the current plan dynamics and the Committee's related efforts to reach a consensus with the various stakeholders.

2. As an initial matter, the Committee strongly disputes any assertion that it is improperly stalling the plan negotiation process. To the contrary, the Second Lien Group need only look in the mirror to find the true culprit. During the first six months of these cases, the Committee essentially was forced to fend off the Second Lien Group's blatant attempts to control these cases and steal the company for itself. The Committee did not receive a plan proposal crafted by the Debtors until November.

3. As previously stated, the Committee concluded it could not support the Debtors' proposal and accordingly commenced working, in good faith, on a substantive proposal in response. The Debtors' principal problem is an over-leveraged prepetition capital structure. As the Committee set out in its previous objection to exclusivity filed in October 2016, there are

---

[1] Any capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion or the Committee's original statement in response to the Motion [D.I. 900], as applicable.

[2] "Second Lien Group" as used herein means the ad hoc group of holders of 9.25% Senior Secured Second Lien Notes issued by the Debtors.

several paths to solve for this problem.[3] The Committee expects that its proposal will, among other things, deleverage the Debtors' balance sheet by equitizing the Debtors' unsecured notes in connection with a substantial new money investment and thus provide the Debtors with a path to exit bankruptcy. It should come as no surprise, however, that any investment of this magnitude takes time and diligence to fully develop. Thus, notwithstanding the Second Lien Group's assertions, the Committee's need for some additional time to complete the necessary diligence is not a delay tactic. Rather, the Committee's attempt to appropriately inform itself should be encouraged, as it enables the Committee to better formulate and consider plan proposals.

4. Furthermore, although the Second Lien Group claims that it has been ready to negotiate a plan and has made multiple proposals, the only proposal it communicated to the Committee was premised on the second lien noteholders' ownership of the company.[4] That proposal was unconfirmable on its face from, among other things, a valuation perspective and certainly not constructive. Thus, the Committee should not be faulted for relegating the second lien noteholders to their proper place as oversecured creditors (to the extent of the validity of their prepetition claims and liens).

5. The Committee will continue in good faith to craft a response to the Debtors' proposal that the Committee would support and would lead to a confirmable plan. The Committee continues to reserve and preserve all of its rights and defenses, including with respect to all matters relating to the Debtors' exclusivity periods and any potential plan.

---

[3] *See Objection of the Official Committee of Unsecured Creditors to the Debtors' Motion to Extend Exclusive Periods* [D.I. 674].

[4] Indeed, the Second Lien Group has already stated that it believes that the second lien notes are the fulcrum debt in these cases. *See* Hearing Transcript (Sep. 15, 2016) at 43:18-19 (Mr. Marcus: "[W]e have very different views than the [C]ommittee about where value breaks, I think it's in the second lien.").

Dated: January 9, 2017
Los Angeles, California

MILBANK, TWEED, HADLEY & McCLOY LLP

*/s/ Gregory A. Bray*

Gregory A. Bray
Paul S. Aronzon (admitted *pro hac vice*)
Haig M. Maghakian (admitted *pro hac vice*)
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000

-and-

Andrew M. Leblanc
Alexander B. Lees
1850 K Street NW, Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

*Counsel to the Official Committee of Unsecured Creditors*