UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------X
                                  :

In re:                               :        Case No. 16-10992 (SMB)
                                    :

BREITBURN ENERGY            :        Chapter 11
PARTNERS LP, *et al.*[1]        :
                                    :        (Jointly Administered)
              Debtors.       :
----------------------------------------------X

## MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART MOTION BY LL&E ROYALTY TRUST FOR RELIEF FROM THE AUTOMATIC STAY

**A P P E A R A N C E S :**

DICKINSON WRIGHT PLLC
*Attorneys for LL&E Royalty Trust*
350 S. Main Street, Suite 300
Ann Arbor, Michigan 48104

Michael C. Hammer, Esq.
Doron Yitzchaki, Esq.
       Of Counsel

WEIL, GOTSHAL & MANGES LLP
*Attorneys for the Debtors and*
*Debtors in Possession*
767 Fifth Avenue
New York, New York 10153

Ray C. Schrock, P.C., Esq.
Stephen Karotkin, Esq.
       Of Counsel

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: Breitburn Energy Partners LP (9953); Breitburn GP LLC (9948); Breitburn Operating LP (5529); Breitburn Operating GP LLC (5525); Breitburn Management Company LLC (2858); Breitburn Finance Corporation (2548); Alamitos Company (9156); Beaver Creek Pipeline, L.L.C. (7887); Breitburn Florida LLC (7424); Breitburn Oklahoma LLC (4714); Breitburn Sawtelle LLC (7661); Breitburn Transpetco GP LLC (7222); Breitburn Transpetco LP LLC (7188); GTG Pipeline LLC (3760); Mercury Michigan Company, LLC (3380); Phoenix Production Company (1427); QR Energy, LP (3069); QRE GP, LLC (2855); QRE Operating, LLC (9097); Terra Energy Company LLC (9616); Terra Pipeline Company LLC (3146); and Transpetco Pipeline Company, L.P. (2620).

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

LL&E Royalty Trust ("LL&E") has moved for relief from the automatic stay to continue state court litigation (the "Texas Litigation") against Debtors QRE Operating, LLC ("QRE"), QR Energy, LP ("QR Energy") (collectively with non-debtor Quantum Resources Management, LLC, "Quantum"), Breitburn Energy Partners LP ("Breitburn Energy"), and Breitburn Management Company LLC (collectively with Breitburn Energy, "Breitburn" and collectively with QRE and QR Energy, the "Debtors"). (*LL&E Royalty Trust's Motion for Relief from Automatic Stay*, dated July 12, 2016 (the "*Stay Relief Motion*"), at ¶ 1 (ECF Doc. # 259).) The Debtors oppose the motion. (*See generally Debtors' Objection to LL&E Royalty Trust's Motion for Relief from the Automatic Stay*, dated Aug. 15, 2016 (the "*Objection*") (ECF Doc. # 382).)

The Texas Litigation was initiated by QRE for declaratory relief relating to a contract dispute between LL&E and QRE concerning the payment of royalties to LL&E arising from an oil and gas field located in Florida and Alabama (the "Jay Field"). LL&E counterclaimed against QRE, the other Quantum parties and Breitburn for breach of the contract that forms the basis of QRE's declaratory judgment action. In addition, LL&E counterclaimed for breach of contract and breach of fiduciary duty against non-debtor third parties joined as additional defendants and also asserted various tort counterclaims against QRE and the other counterclaim defendants.

For the reasons set forth below, the *Stay Relief Motion* is granted, with certain limitations, to allow the parties to resolve the issues relating to the payment of royalties, if any, as more fully discussed below. The balance of the motion is denied.

## BACKGROUND[2]

The debtor Breitburn Energy is a master limited partnership and a holding entity that, along with its debtor and non-debtor affiliates, is in the business of acquiring, exploiting and developing oil and gas properties, "Midstream Assets" (including pipelines and processing plants) and certain ethane, propane, butane and natural gasolines. (*Declaration of James G. Jackson Pursuant to Local Bankruptcy Rule 1007-2 and in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, filed May 16, 2016 (the "*Jackson Declaration*"), at ¶ 5 and ¶ 5 n.2 (ECF Doc. # 13).)

Prior to 2006, ConocoPhillips Company ("ConocoPhillips") and ExxonMobil held the working interests in the Jay Field. (*Stay Relief Motion* at ¶ 6.) Through various mergers and acquisitions between 2006 and 2014, the Debtors acquired the working interests in the Jay Field, and according to LL&E, became responsible for paying the royalties. (*E.g., Stay Relief Motion* at ¶¶ 7-8.) The debtor QRE presently holds the majority working interest in the Jay Field. (*Objection* at ¶ 5.) Without deciding whether the predecessor Debtors assumed contractual or other obligations to pay royalties, references in this opinion to QRE include the Debtor predecessors.

LL&E owns an "overriding royalty interest" (the "Royalty Interest") in the Jay Field. (*Stay Relief Motion* at ¶ 6; *Objection* at ¶ 5.) It acquired the Royalty Interest in 1983 pursuant to a Conveyance of Overriding Royalty Interests (the "Conveyance Agreement"),[3] which was recorded in Santa Rosa County, Florida. (*Stay Relief Motion*

---

[2]    Unless otherwise noted, all ECF document numbers refer to case no. 16-11390.

[3]    A copy of the Conveyance Agreement is attached as Exhibit 2 to the *Stay Relief Motion* (ECF Doc. # 259-2).

at ¶ 6; Conveyance Agreement at 1.)  The Conveyance Agreement is governed by Texas law, except to the extent Florida law "mandatorily" applies "by virtue of the fact that the [underlying oil, gas and mineral] Leases affect lands located in . . . Florida." (Conveyance Agreement, Art. XXIII, at 22.)[4]  The parties acknowledge that their rights are governed by the Conveyance Agreement.  (*Objection* at ¶ 5; *see Stay Relief Motion* at ¶¶ 6-8.)

LL&E's Royalty Interest consists of 50% of the "Net Proceeds attributable to the Subject Interests" conveyed pursuant to the Conveyance Agreement.  (Conveyance Agreement at 1.)  The Net Proceeds are "for each month, the excess, if any, of the Gross Proceeds for such month over Production Costs for such month."  (*Id.* § 1.15, at 5.)  QRE is required to use its "best efforts" to pay the amounts attributable to the Royalty Interest each month, (*id.*, Art. VIII (a), at 12), but may place proceeds into a formal escrow account under certain circumstances, including in the event of uncertainty or controversy as to the sale price of the Subject Minerals (as defined in the Conveyance Agreement), (*id.*, Art. VIII (d), at 13), and subject to conditions set forth in the Conveyance Agreement.  Alternatively, QRE may refrain from escrowing proceeds, and instead calculate and pay amounts due to LL&E as though such funds had been escrowed, subject to certain conditions and limitations set forth in the Conveyance Agreement.  (*Id.*, Art. VIII (h), at 16.)

---

[4]    The parties have not argued that Florida and Texas law differ on the issues material to their dispute.

Importantly, QRE may also withhold payment and escrow proceeds in the Special Cost Escrow Account in certain situations, including if the "aggregate estimated future Gross Proceeds . . . is less than . . . [the] estimated future Production Costs." (*Id.*, Art. VIII (e), at 14.)[5] Consequently, LL&E would be entitled to past or current royalty payments, but QRE may nevertheless have the right to withhold payment and place the proceeds in the Special Cost Escrow Account based on estimated future shortfalls in revenue. Although QRE has apparently withheld payment under this provision, it did not create or fund the Special Cost Escrow Account. Instead, it takes the position that Article VIII (h), described in the preceding paragraph, allows it to forego the escrow and calculate and pay royalties as if it had funded the escrow. (*Debtors' Supplemental Objection to LL&E Royalty Trust's Motion for Relief from the Automatic Stay*, dated Sept. 1, 2017 ("*Debtors' Supplement*") at ¶¶ 10-11 (ECF Doc. # 476.)

## A.    The Texas Litigation

The principal dispute concerns LL&E's contractual right to the payments withheld by QRE. On August 12, 2015, QRE commenced the Texas Litigation against Roger D. Parsons, in his capacity as trustee of LL&E.[6] (*See Plaintiff's Original Petition for Declaratory Judgment*, dated Aug. 12, 2015 (the "*Texas Petition*").)[7] In relevant part, the *Texas Petition* sought a declaratory judgment that QRE had paid LL&E the

---

[5]    The amount of payments QRE may withhold to cover future costs is subject to a formula and several limitations. For present purposes, it is sufficient to say that QRE is entitled to withhold payments under certain circumstances, but LL&E argues that it has not followed the Conveyance Agreement in withholding payments.

[6]    LL&E had commenced an earlier action in the United States District Court for the Eastern District of Michigan, but the Michigan Court dismissed the complaint for lack of subject matter jurisdiction.

[7]    A copy of the *Texas Petition* is annexed to the *Stay Relief Motion* as Exhibit 4. (ECF Doc. # 259-4.)

correct amounts (and had therefore withheld the correct amounts to cover estimated future costs) in accordance with the terms of the Conveyance Agreement and had otherwise complied with the Conveyance Agreement.  (*Texas Petition* at ¶¶ 61-73 & p. 16.)

Parsons answered on February 19, 2016.  (*See Defendant Roger D. Parsons' First Amended Answer, Original Counterclaim and Original Third-Party Petition* dated Feb. 19, 2016 (the "*Texas Answer*").)[8]  The *Texas Answer* contained a general denial of the allegations asserted in the *Texas Petition*, (*Texas Answer* at ¶ 1.1), and asserted eight counterclaims against QRE and additional parties joined as counterclaim defendants. The eight counterclaims fell into three categories.  First, Cause of Action One ("Count One") asserted a counterclaim for breach of contract against Quantum and Breitburn based on their failure to pay royalties, their overstatement of future costs and their refusal to contribute their share of future costs, provide the information needed by LL&E to remain publically registered and provide a full and complete accounting of the estimated reserves, interest payments and escrow sums.  (*Id.* at ¶ 3.50.)  Second, Causes of Action Two through Five charged the non-Breitburn and non-Quantum defendants with breach of contract and breach of fiduciary duty.  (*Id.* at ¶¶ 3.52-3.63.)  Third, Causes of Action Six through Eight (the "Tort Counts") charged all of the counterclaim defendants with tortious interference with contract, inducing a breach of fiduciary duty and conspiracy.  (*Texas Answer* at ¶¶ 3.64-3.71.)  The Tort Counts, as they concerned Quantum and Breitburn, and in addition to the alleged interference with and diversion

---

[8]     A copy of the *Texas Answer* is annexed to the *Stay Relief Motion* as Exhibit 5.  (ECF Doc. # 259-5.)

of LL&E's royalty payments, rested on allegations that they conspired with the other counterclaim defendants to devalue LL&E's assets and withhold information needed by potential bidders with the goal of forcing a sale of LL&E's assets to Quantum at a reduced price, (*see id.* at ¶¶ 3.33, 3.35, 3.36, 3.64-3.71), and sought to trigger the mandatory termination provision of the LL&E trust agreement.  (*Id.* at ¶ 3.37.)  A lawsuit by an LL&E beneficiary thwarted the attempt to terminate LL&E, but LL&E incurred attorney's fees and litigation costs in connection with that earlier lawsuit.  (*Id.* at ¶¶ 3.38-3.39.)  The counterclaims sought damages, including exemplary damages, attorney's fees, costs, interest and other legal and equitable relief to which it might be entitled.  (*E.g.*, *id.* at 20-21.)

**B.    The *Stay Relief Motion***

**1.    Introduction**

Breitburn and twenty-one affiliates, including the other Debtors, commenced chapter 11 cases in this Court on May 15 and May 16, 2016.  (*See* n.1, *supra* (listing debtor entities).)  LL&E agrees that the bankruptcy filing "arguably" stayed Count One and stayed the Tort Counts to the extent they are directed at the Debtors.  (*Stay Relief Motion* at ¶ 2.)  Accordingly, on July 12, 2016, LL&E filed the *Stay Relief Motion* to allow the Texas Litigation to proceed against the Debtors.  In light of the Debtors' chapter 11 filings, the Texas court "put the [Texas Litigation] 'on hold,'" and LL&E has not requested that the Texas court proceed with the unstayed claims pending the determination of the *Stay Relief Motion*.  (*LL&E Royalty Trust's Supplemental Brief in Support of Motion for Relief from Automatic Stay*, dated Sept. 1, 2016 ("*LL&E Supplement*"), at 3 (ECF Doc. # 477).)

Section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief

from the automatic stay "[o]n request of a party in interest . . . for cause, including the

lack of adequate protection of an interest in property of such party in interest." 11 U.S.C.

§ 362(d)(1). The Bankruptcy Code does not define "cause," but courts are guided by the

factors enumerated in *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax

Indus., Inc.*), 907 F.2d 1280 (2d Cir. 1990) (the "*Sonnax* Factors"):

> (1) whether relief would result in a partial or complete resolution of
> the issues; (2) lack of any connection with or interference with the
> bankruptcy case; (3) whether the other proceeding involves the debtor as a
> fiduciary; (4) whether a specialized tribunal with the necessary expertise
> has been established to hear the cause of action; (5) whether the debtor's
> insurer has assumed full responsibility for defending it; (6) whether the
> action primarily involves third parties; (7) whether litigation in another
> forum would prejudice the interests of other creditors; (8) whether the
> judgment claim arising from the other action is subject to equitable
> subordination; (9) whether movant's success in the other proceeding
> would result in a judicial lien avoidable by the debtor; (10) the interests of
> judicial economy and the expeditious and economical resolution of
> litigation; (11) whether the parties are ready for trial in the other
> proceeding; and (12) impact of the stay on the parties and the balance of
> harms.

*Id.* at 1286. Not all of the factors are relevant in every case, *Schneiderman v.

Bogdanovich* (*In re Bogdanovich*), 292 F.3d 104, 110 (2d Cir. 2002); *Mazzeo v. Lenhart

(In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999), and the Court need not assign equal

weight to each factor. *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).

The movant bears the initial burden of making a *prima facie* showing of "cause"

for relief from the stay, but the ultimate burden of persuasion rests with the debtor to

show an absence of "cause." *See Mazzeo*, 167 F.3d at 142; *Sonnax*, 907 F.2d at 1285; *cf.*

11 U.S.C. § 362(g)(2) (party opposing stay relief has burden of proof on all issues other

than debtor's equity in subject property). The burden on the movant seeking relief from

the automatic stay to prosecute an unsecured claim is especially heavy. "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief," *In re Leibowitz,* 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); *accord Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.),* No. 10 Civ. 36 (RJH), 2010 WL 4966018, at *4 (S.D.N.Y. Nov. 8, 2010); *In re Residential Capital, LLC*, 501 B.R. 624, 643-44 (Bankr. S.D.N.Y. 2013), lest the unsecured creditor receive a distributive advantage contrary to the principle of equality of distribution. *Motors Liquidation Co.*, 2010 WL 4966018, at *4; *Leibowitz*, 147 B.R. at 345.

## 2.    The Royalty Interest

LL&E does not contend that it is a secured creditor. Nevertheless, the disposition of the *Stay Relief Motion* is complicated by the threshold question of whether the unpaid royalty funds are property of the estate or property of LL&E. LL&E maintains that the Royalty Interest is a real property interest under Texas law, (*LL&E Supplement* at 4), and the disputed funds are held in an express trust under the terms of the Conveyance Agreement, (*id.* at 8), or in the alternative, in a constructive or resulting trust under Texas law. (*Id.*) The Debtors contend that LL&E's Royalty Interest is not an interest in property but a mere contract right, (*Debtors' Supplement* at ¶ 19), and any unpaid royalties are unsecured claims. (*See id.* at ¶ 4 (describing LL&E as a "typical prepetition, general unsecured creditor.").)

Texas law is unclear. Older Texas authority distinguishes between an "overriding royalty," which the Conveyance Agreement purports to grant, and a "net profits royalty,"

which it actually grants.[9] "An 'overriding royalty' is an interest in oil and gas produced at the surface, *free of the expense of production*, and carved from the working interest held under an oil and gas lease, rather than from the royalty reserved by a landowner on the severance of the mineral estate." *T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 291 (Tex. App. 1983, *writ ref'd n.r.e.*) (emphasis added).  In contrast, "[a] net profits interest is a share of gross production . . . [under which] the operator pays all costs of exploration and development and, after satisfying such costs from the proceeds of production, shares the profits on an agreed basis with the owner of the net profits interest." *Id.* (quoting 2 WILLIAMS AND MEYERS, OIL AND GAS LAW § 424.1 at 439 (1981)). The Conveyance Agreement requires LL&E to share in the costs of production, (*see Conveyance Agreement* at § 1.18, at 6-10 & Ex. B (defining "Production Costs")), and hence, LL&E holds a net profits royalty.

While older cases treated a net profits interest as a contractual right rather than a property interest, *see LeBus v. LeBus*, 269 S.W.2d 506, 510-511 (Tex. Civ. App. 1954, *writ ref'd n.r.e.*), the current view seems to treat net profits royalty interests like true overriding royalty interests as interests in realty.  *See Delta Petroleum General Recovery Trust v. BWAB Ltd. Liability Co.* (*In re Delta Petroleum Corp.*), Adv. Proc. No. 12–50898 (KJC), at *8 n.17 (Bankr. D. Del. Apr. 2, 2015) ("There is some indication in early cases, at least by way of dictum, that the [net profits] interest is a mere contract interest.  We believe, however, that a net profits interest should be treated in much the

---

[9]    "[W]hether the interest created or reserved in an instrument is an overriding royalty or something else depends upon the true nature and the wording of the particular conveyance which gives rise to the interest. Calling an interest an overriding royalty would not be conclusive of its true status." *Delta Drilling Co. v. Simmons*, 338 S.W.2d 143, 146-47 (Tex. 1960).

same manner as an overriding royalty and that it should be classified as an interest in land." (footnotes omitted) (quoting 2–4 WILLIAMS & MEYERS, OIL AND GAS LAW § 424.1 (2014)); *Madera Prod. Co. v. Atlantic Richfield Co.*, 107 S.W.3d 652, 659-60 (Tex. App. 2003) ("An action seeking royalty and overriding royalty in minerals is considered a suit on real property interests for the purpose of fixing venue in suits for recovery of such interests *or damages thereto . . .* [and a] suit seeking net profits interest based on ownership of land is also an interest in land." (emphasis in original) (citing *T–Vestco*, 651 S.W.2d at 292)); *Parker v. Petro-Lewis Corp.*, 663 S.W.2d 905, 907-08 (Tex. App. 1983) (net profits interest in oil and gas lease is interest in land for venue purposes); *see generally* 55A TEX. JUR. 3d, OIL & GAS § 348 (April 2017 Update) (oil and gas in place, oil and gas leases and economic interests derived from them are interests in real property).

Texas law also distinguishes between future royalties and accrued royalties. Once oil or gas is extracted from the land it becomes personal property. *Anadarko E & P Co. v. Clear Lake Pines, Inc.*, No. 03-04-00600-CV, 2005 WL 1583506, *3 (Tex. App. July 7, 2005); *Phillips Petroleum Co. v. Mecom,* 375 S.W.2d 335, 339 (Tex. Civ. App. 1964); *Lone Star Gas Co. v. Murchison,* 353 S.W.2d 870, 879 (Tex. Civ. App. 1962, *writ ref'd n.r.e.*). Thus, even if future royalties (derived from unextracted oil or gas) are interests in real property, "[r]oyalties accrue, and therefore become interests in personal property, at the time the minerals are severed from the land." *Anadarko*, 2005 WL 1583506, *3 (citations omitted).

The Debtors have contributed to the confusion because they previously (and successfully) took the position advocated by LL&E that they now oppose.[10]  The Debtors sought authority to make royalty payments in a "First Day" motion.  (*See Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 541 for Entry of Interim and Final Orders (I) Authorizing Payment of All Funds Relating to Royalty Interests and (II) Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Royalty Interests*, dated May 15, 2016 (the "*Royalty Motion*") (ECF Doc. # 16.) They argued that Royalty Interests (as defined in the *Royalty Motion*), which included "net profits interests," (*id.* at ¶ 14), were real property interests in most states in which they operate, including Texas, (*id.* at ¶ 20), and were the property of the Royalty Interest Holders.  (*Id.* at ¶ 21.)

Hence, the proceeds were not property of the estate, (*id.* at ¶ 22), and the automatic stay might not prevent the Royalty Interest Holders from enforcing their rights in the royalty payments.  (*Id.* at ¶ 23.)  They asserted that "[t]he Debtors at most hold bare legal title to the Royalty Payments held in the Royalty Accounts and hold *no* legal title to the percentage of the oil and gas production attributable to the Royalty Interest Holders."  (*Id.* at ¶ 26 (emphasis in original).)  The Debtors asked the Court to "hold that the Royalty Payments are not property of the Debtors' estates . . . and [ ] authorize the Debtors to make the Royalty Payments to the Royalty Interest Holders . . . for obligations incurred prior to or after the Petition Date on account of the Royalty Interests."  (*Id.* at ¶ 28.)

---

[10]    LL&E has not argued that the Debtors are judicially estopped from taking the position they have advanced in opposition to the *Stay Relief Motion*.

The *Royalty Motion* acknowledged that under the law in three jurisdictions (but apparently not Texas), the Royalty Interests might constitute property of the estate. (*Id.* at ¶ 29.) Even in those situations, the debtors maintained that they should be authorized to satisfy their pre-petition royalty obligations under the doctrine of necessity. They argued that "such relief is necessary for the Debtors to carry out their fiduciary duties under sections 1107(a) of the Bankruptcy Code." (*Id.* at ¶ 31.) Moreover, "taking into account the costs and risks associated with litigating the issue and the importance of the Debtors' ongoing relationships with its Royalty Interest Holders, sound business reasons exist for granting the relief requested." (*Id.* at ¶ 34.)

The Court granted the *Royalty Motion* without opposition. (*Interim Order Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 541 (I) Authorizing Payment of All Funds Related to Royalty Interests and (II) Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Royalty Interests,* dated May 17, 2016 (ECF Doc. # 38); *Final Order Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 541 (I) Authorizing Payment of All Funds Related to Royalty Interests and (II) Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Royalty Interests,* dated June 15, 2016 (ECF Doc. # 135).)

In conclusion, whether accrued net profits royalties are property of the royalty interest holder under Texas law appears to be unsettled even in the minds of the Debtors. The Court does not decide the issue, and its unsettled nature informs to some extent the disposition of the *Stay Relief Motion*. In this regard, although the parties treat the *Stay Relief Motion* as an "all or nothing" proposition, the Court views it as

consisting of two discrete branches: Count One and the Tort Counts.  I now turn to the consideration of each branch.

### 3.    Count One

The *Texas Petition* seeks a declaration of the rights of the parties under the Conveyance Agreement.  The *Texas Petition* is not stayed, and Count One is the flip side of the *Texas Petition*.  The question common to both claims is whether QRE properly withheld LL&E's share of the net profits under the terms of the Conveyance Agreement. Stay relief will result in a complete resolution of this issue, (*Sonnax* Factor # 1), and promote the interests of judicial economy and the expeditious and economical resolution of the issue.  (*Sonnax* Factor # 10.)  In addition, although the contract dispute is connected to the bankruptcy cases, the litigation of that dispute will not interfere with the cases, (*Sonnax* Factor # 2), or prejudice the other creditors.  (*Sonnax* Factor # 7.) The Debtors have already taken the position (which the Texas court may nonetheless reject) that the net profits royalties are not property of the estate that can be used to pay other creditors.  Furthermore, the Debtors appear to owe LL&E fiduciary duties under Texas law (*Sonnax* Factor # 3).  *See Luecke v. Wallace*, 951 S.W.2d 267, 274 (Tex. App. 1997) ("An executive owes nonparticipating royalty interest owners a duty of utmost good faith.  This duty is a fiduciary duty arising from the relationship of the parties and not from contract.  The 'duty requires the holder of the executive right . . . to acquire for the non-executive every benefit that he exacts for himself.'") (internal citations omitted) (citing and quoting *Manges v. Guerra,* 673 S.W.2d 180, 183 (Tex. 1984)).

In addition, although the Texas court is technically not a specialized tribunal, (*Sonnax* Factor # 4), the question of whether LL&E holds a property right or a mere

unsecured contract claim in the amount of unpaid net profits is unsettled under Texas law, and the determination of the Texas courts will assist this Court and ultimately contribute to a resolution of the dispute.  *See City Ins. Co. v. Mego Int'l Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) ("A [bankruptcy] court may . . . allow a suit commenced in state court to proceed in that forum if a decision in that suit requires judicial interpretation of intricate or ambiguous state law or resolution of unsettled state law questions, such functions being more properly within the expertise of a state court."); *Terry v. Johnson (In re Terry)*, 12 B.R. 578, 583 (Bankr. E.D. Wis. 1981) (finding cause to vacate the automatic stay where a plaintiff asserted claims based on a novel state law theory that raised "serious public policy questions").

Finally, the balance of harms weighs in favor of LL&E.  (*Sonnax* Factor # 12.)  The *Royalty Motion* acknowledged that the estate had no legal right to withhold the payment of non-estate funds to the Royalty Interest Holders.  In fact, the debtors argued that even if the Royalty Interests were estate property, it was still critical to pay the Royalty Interest Holders under the doctrine of necessity.  Thus, the liquidation of LL&E's claim, if any, to unpaid royalties will assist the Debtors in the performance of their duties, and will obviously benefit LL&E.

Some of the *Sonnax* Factors concededly militate against the granting of stay relief.  Count One does not primarily involve third parties.  (*Sonnax* Factor # 6.)  The Debtors rather than an insurer will bear the cost of the litigation.  (*Sonnax* Factor # 5.)  Lastly, the parties are not ready for trial.  (*Sonnax* Factor # 11.)

On balance, however, the Court concludes that Count One should be litigated along with QRE's unstayed declaratory judgment claim in Texas.  Accordingly, stay relief is granted to allow the Texas courts to determine the parties' rights under the Conveyance Agreement, and in particular, whether and to what extent LL&E owns or holds a beneficial or other interest in the net profits, or alternatively, is an unsecured creditor in the amount of the accrued, unpaid net profits.  Following the disposition of the issues by the Texas court, the parties should return to this Court to determine the appropriate remedy under bankruptcy law.  Nothing in this decision authorizes relief from the stay to recover any property or receive payment.

### 4.    The Tort Counts

I reach a different conclusion with respect to the Tort Counts.  The Tort Counts assert unsecured claims against the Debtors (and Quantum) among others, and most of those claims have nothing to do with the contract dispute underlying the Conveyance Agreement.  Forcing the Debtors to bear the costs and disruptions involved in liquidating these unsecured claims before knowing what distribution will be made to unsecured creditors unnecessarily interferes with the bankruptcy cases and prejudices the unsecured creditors.  (*Sonnax* Factors ## 2, 5, 7.)  Further, in contrast to the property issues discussed earlier, the Tort Counts do not present difficult issues of Texas law.  (*See Sonnax* Factor # 4.)  In addition, the Tort Counts do not *primarily* involve third parties, (*Sonnax* Factor # 6), and are not ready for trial.  (*Sonnax* Factor # 11.)

Moreover, the automatic stay does not prevent LL&E from prosecuting Causes of Action Two through Five (which are not directed at the Debtors) and the Tort Counts against the other non-debtor counterclaim defendants, while pursuing its unsecured

claim against the Debtors through the claims allowance process. Further, the automatic stay does not protect the Debtors from pre-trial discovery in the Texas Litigation. *See In re Residential Capital, LLC*, 480 B.R. 529, 537 (Bankr. S.D.N.Y. 2012) ("[S]ection 362(a) does not, standing alone, protect the Debtors from discovery in third-party actions."); *Groner v. Miller (In re Miller)*, 262 B.R. 499, 505 (B.A.P. 9th Cir. 2001) ("[S]ection 362(a) does not preclude generation of information regarding claims by or against a non-debtor party, even where that information could eventually adversely affect the Debtor.").

I recognize that this bifurcation may not be the most economical method of resolving issues common to the Debtors and non-debtor counterclaim defendants. (*Sonnax* Factor # 10.) But if joining a debtor as a defendant in a multi-defendant case meant that judicial economy always mandated stay relief, this factor would subsume the other *Sonnax* Factors in many cases, and force a debtor to defend against unsecured claims possibly in multiple venues. Instead, the balance of harms tips decidedly in favor of the Debtors. (*Sonnax* Factor # 12.) LL&E remains free to pursue its unstayed claims against the non-debtor counterclaim defendants and file a proof of claim in this Court, while the Debtors avoid the time and expense of participating in a trial involving numerous parties when the ultimate distribution to the unsecured class may prove that

the value of the claim in "bankruptcy dollars" is not worth the expense to either party of

litigating it.

Settle order on notice.

Dated: New York, New York
April 14, 2017

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge