UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X
In re:                                    :
                                          :        Chapter 11
BREITBURN ENERGY                          :
PARTNERS LP, *et al.*,[1]                 :        Case No.: 16-11390 (SMB)
                                          :
                        Debtors.          :
-----------------------------------------------X

## MEMORANDUM DECISION EXPUNGING
## AND DISALLOWING THE COOLEY CLAIMS

**A P P E A R A N C E S :**

DOROTHY MAE COOLEY
*Pro Se*
1291 Harvest East
Traverse City, Michigan 49856

WEIL, GOTSHAL & MANGES LLP
*Attorneys for Defendants*
767 Fifth Avenue
New York, New York 10153

     Ray C. Schrock, P.C. Esq.
     Stephen Karotkin, Esq.
       Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

     The Debtors filed an omnibus claims objection seeking, *inter alia*, to expunge

and disallow two claims filed by Dorothy Mae Cooley (the "Cooley Claims") on the

ground on that they have been paid in full.  (*Debtors' Fifth Omnibus Objection to Claims*

*(No Liability Royalty Claims)*, dated Dec. 12, 2016 (the "*Omnibus Objection*") at ¶ 7 and

---

[1]     The debtors in these chapter 11 cases (collectively, the "Debtors") are as follows: Breitburn Energy Partners LP; Breitburn GP LLC; Breitburn Operating LP; Breitburn Operating GP LLC; Breitburn Management Company LLC; Breitburn Finance Corporation; Alamitos Company; Beaver Creek Pipeline, L.L.C.; Breitburn Florida LLC; Breitburn Oklahoma LLC; Breitburn Sawtelle LLC; Breitburn Transpetco GP LLC; Breitburn Transpetco LP LLC; GTG Pipeline LLC; Mercury Michigan Company, LLC; Phoenix Production Company; QR Energy, LP; QRE GP, LLC; QRE Operating, LLC; Terra Energy Company LLC; Terra Pipeline Company LLC; and Transpetco Pipeline Company, L.P.

Ex. A p. 4 (ECF Doc. # 820).)[2]  Cooley opposes the objection as it relates to her claims. For the reasons that follow, the Court concludes that Cooley has failed to sustain her burden of proof, and accordingly, her claims are disallowed.

## BACKGROUND

### A.    General Background

The Debtor Breitburn Energy Partners LP is a master limited partnership and together with its debtor and non-debtor affiliates is in the business of acquiring, exploiting and developing oil and gas properties, "Midstream Assets" (including pipelines and processing plants) and certain ethane, propane, butane and natural gasolines.  (*Declaration of James G. Jackson Pursuant to Local Bankruptcy Rule 1007-2 and in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, filed May 16, 2016 (the "*Jackson Declaration*"), at ¶ 5 and ¶ 5 n.2 (ECF Doc. # 13).)

The Debtors do not generally hold 100% of the interests in any real property.  *Id.* at ¶ 8.  Instead, they enter into various agreements with respect to the exploitation and development of the property.  *Id.*  Among these agreements are leases pursuant to which owners of mineral interests, which consist of the oil and gas in place under a parcel of property, convey exclusive exploration and extraction rights to the Debtors (each, an "Oil and Gas Lease").  (*Motion of the Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 541 for Entry of Interim and Final Orders (I) Authorizing Payment of All Funds Relating to Royalty Interests and (II) Directing Financial Institutions to Honor and*

---

[2]    Unless otherwise noted, "ECF Doc. # ___" refers to the document number listed on the electronic docket of the lead chapter 11 case, case no. 16-11390.  "*Tr.*" refers to the transcript of the hearing held in these chapter 11 cases on March 9, 2017 (ECF Doc. # 1131).

*Process Checks and Transfers Related to Such Royalty Interests*, filed May 16, 2016 (the "*Royalty Motion*") at ¶ 9 (ECF Doc. # 16).  In that situation, the owner retains a "landowner's royalty interest" which entitles the owner to a share in a stated portion of production.  (*Id.*)

The Debtor's right to exploit the minerals under an Oil and Gas Lease is known as a "working interest."  (*Id.* at ¶ 10.)  In most jurisdictions, working interest holders may carve out another type of real property interest, known as an "overriding royalty interest."  (*Id.* at ¶ 10.)  "An 'overriding royalty' is an interest in oil and gas produced at the surface, *free of the expense of production*, and carved from the working interest held under an oil and gas lease, rather than from the royalty reserved by a landowner on the severance of the mineral estate."  *In re Breitburn Energy Partners LP*, Case No. 16-10992 (SMB), 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017) (emphasis in original) (quoting *T-Vestco Litt-Vada v. Lu-Cal One Oil Co.,* 651 S.W.2d 284, 291 (Tex. App. 1983, *writ ref'd n.r.e.*)).

At the time of their chapter 11 filing, the Debtors held, and continue to hold, working interests in various Oil and Gas Leases.  (*Royalty Motion* at ¶ 12.)  Each Oil and Gas Lease in which the Debtors hold working interests is subject to the right of the landowner and/or third party to receive royalties.  (*Id.* at ¶ 14.)

## B.    Cooley and the Cooley Estate

The Cooley Claims concern her right to receive royalties originating with the estate (the "Raymond Estate") of her deceased father, Raymond Cooley ("Raymond"). (*Debtors' Supplemental Response to Objection of Dorothy Mae Cooley to Debtors' Fifth*

*Omnibus Objection to Claims (No Liability Royalty Claims)*, dated June 14, 2017 (the "*Debtors' Supplement*") at ¶ 10 (ECF Doc. # 1354); *see also Objection of Dorothy Mae Cooley to Notice of Debtors' Fifth Omnibus Objection to Claims (No Liability Royalty Claims)* (the "*Cooley Response*") at 1 (referring to the Raymond Cooley estate and stating that Cooley is the "sole named residuary devisee beneficiary of all the fee simple . . . real property that [Raymond] had at the time of his passing.") (ECF Doc. # 906).) Raymond was married to Jean Cooley ("Jean") and had three daughters: the claimant, Dorothy Cooley, Mary Len Cooley ("Mary") and Ruth S. Fleming ("Fleming"). (*Debtors' Supplement* at ¶ 10.) At some point, Raymond and Jean divorced. The Divorce Judgment, dated December 20, 1993, (*id.*, Ex. A), awarded the oil, gas and mineral rights, which included the right to receive royalties pursuant to leases, 40% to Jean and 60% to Raymond, regardless of who held title to the rest of the interests relevant to the related real property. (*Id.*, Ex. A, at ¶ VIII, p. 4.)

Raymond died on April 5, 1995. (*Debtors' Supplement* at ¶ 12.) His will, dated September 16, 1994 (the "Will"), (*Debtors' Supplement*, Ex. B), contemplated the existence of a Raymond Cooley Trust, (Will ¶ II), and attached the agreement that purported to create the trust, also dated September 16, 1994 (the "Trust Agreement"). (*Debtors' Supplement*, Ex. B.) The Will provided, in relevant part, that Raymond's "Residuary Estate" was to be "held, administered, and distributed as provided in th[e] Trust Agreement." (Will at ¶ V.) The Trust Agreement, in turn, provided that upon Raymond's death, his "tangible personal property" should be distributed as Raymond would direct in a forthcoming written memorandum, (Trust Agreement, Art. V), and the remaining trust property would be distributed to six specific recipients in percentage

4

amounts as set forth in the Trust Agreement.  (*Id.*, Art. VI.)  In relevant part, Cooley and each of her siblings were to receive 22.5% of the trust property.  (*Id.*)  In the event that the Trust was "for any reason . . . ineffective or invalid," the Residuary Estate would instead be devised to Cooley "as Trustee" and "IN TRUST . . . to be held, administered and distributed in accordance with the provisions of the . . . Trust Agreement."  (Will at ¶ VI (emphasis in original).)  Finally, the Will nominated Cooley as the "Personal Representative" of both the Will and of Raymond's estate, but if Cooley failed to survive Raymond, or did not qualify or act as Raymond's personal representative, the Will nominated Fleming and Mary as co-personal representatives.  (Will at ¶ VII.)

On May 20, 1996, the Otsego County Probate Court entered an order removing Cooley as personal representative and appointing Fleming and Mary as co-personal representatives in her stead (the "*Removal Order*").  (*Debtors' Supplement*, Ex. C.) Following her removal, Cooley embarked on a pattern of abusive litigation in the Michigan state courts relating to the Raymond Estate and even filed fabricated deeds. (*See generally Debtors' Supplement* at ¶¶ 22-23 (discussing Cooley's litigation endeavors).  The gravamen of her claims appeared to be that the Michigan courts had made errors regarding the disposition of Raymond's Residuary Estate, and she was the sole holder of Raymond's estate's 60% interest in the various leases and rights to royalties that he held at the time of his death.  (*Cf. generally id.*)  In one such action that Cooley brought against her siblings and others, the Otsego County Circuit Court found that the action was frivolous and subject to sanctions, and directed that the Otsego County Clerk and the Register of Deeds "shall accept no further filings from Dorothy M. Cooley relating to the issues probated in the Estate of Raymond Cooley."  (*Debtors'*

*Supplement*, Ex. P.)  In a separate action, the same court ordered a deed recorded by

Cooley null and void, (*id.*, Ex. Q), and entered an order permanently enjoining Cooley

from filing any "further complaints or pleadings within [the 46th] Circuit directly or

tangentially involving the [Cooley Estate] without the specific prior approval of the Chief

Judge of this Circuit or Order of an appellate court." (*Permanent Injunction*, dated Nov.

26, 2001, *Debtors' Supplement*, Ex. R.)  In February 2002, another court ordered the

same injunctive relief against Cooley. (*Debtors' Supplement*, Ex. S.)

Despite these injunctions, Cooley apparently continued her efforts to obtain

control over the property that had formerly belonged to the Raymond Estate.  On May

29, 2014, the Honorable Patricia A. Morse of the 87-A District Court in Otsego County

wrote Cooley a letter, (*Debtors' Supplement*, Ex. T), indicating that Cooley had sought to

have a "Deputy John Dye" serve certain "notices for wrongful occupancy," which Judge

Morse characterized as "an attempt to by-pass the judicial system and evict the lawful

owners" of premises that had been part of the Raymond Estate.  Judge Morse's May

2014 letter also referred to a prior order holding Cooley in contempt for continuing

litigation related to the Raymond Estate and offered to meet with Cooley to discuss the

matter.  Judge Morse sent a second letter, dated as of June 13, 2014, (*Debtors'

Supplement*, Ex. U), indicating that the meeting Judge Morse offered never took place

and reiterating that Cooley's "continued claim to [the Raymond Estate] . . . ha[d] been

litigated and appealed and [was] final."  The second letter also expressed concern

regarding Cooley's statement in a separate letter to Judge Morse that Cooley would

"take 'self-help' to regain possession of the disputed property" and informed Cooley that

Judge Morse would instruct Deputy Dye to "take no action" on Cooley's claim.

## C.    Relevant Properties

The Debtors have demonstrated that they hold working interests in three "Production Units" that pay royalties to Cooley and her siblings.[3]  These include one unit located in Livingston Township, Otsego County, Michigan ("Livingston West"), and two units located in Vienna Township, Montmorency County, Michigan ("Vienna 2" and "Vienna 34").[4]  (*Debtors' Supplement* at ¶ 15.)  Cooley does not dispute that she has received the payments arising from Livingston West.  (*Objection [and] Response to Breitburn Energy Partners L.P.* [*etc.*], dated Apr. 6, 2017 (the "*Cooley April Supplement*"), at 2 (ECF Doc. # 1178).)  She and her siblings each own a 20% interest (one-third of the Raymond Estate's interest) in the royalties generated by Vienna 2 and Vienna 34 pursuant to mineral deeds granted by the Raymond Estate.  (*Debtors' Supplement* at ¶ 15; *see also* Ex. F, H.)  Finally, Cooley receives payments from other parties holding working interests in Vienna 2 and Vienna 34 in addition to a fourth Production Unit ("Vienna 14").  (*Debtors' Supplement* at ¶ 15.)

Cooley's submissions to the Court also mention two other Production Units, one in Charlton Township, Otsego County, Michigan ("Charlton 12") and another in Elmira Township, Otsego County, Michigan ("Elmira 14"). (*See, e.g. Cooley April Supplement* at 2.)  The Debtors do not have any interest in Charlton 12, (*Debtors' Supplement* at ¶ 17), and hold a non-working, "overriding royalty interest," free of expenses, in Elmira 14.

---

[3]      Under Michigan law, an oil and gas company may combine leases of property owned by two or more landowners to form a Production Unit, and pay royalties in proportion to the landowners' ownership interests in the Production Unit.  (*Debtors' Supplement* at ¶ 14 (citation omitted).)

[4]      A Production Unit is sometimes identified by the name of the geographic subdivision in which it sits such that, for instance, a Production Unit in section 14 of Vienna Township would be known as "Vienna 14."

(*Id.* at ¶ 21.)  The holders of the working interest in Elmira 14 rather than the Debtors

are required to pay any royalties owed to the owners.  (*Id.*)

**D.    The Cooley Claims and the *Omnibus Objection***

Cooley filed the first of the Cooley Claims, Proof of Claim No. 2053 (the "BBEP

Claim"), on October 11, 2016, and the second, Proof of Claim No. 2405 (the "Terra

Claim"), on October 13, 2016.  The BBEP Claim asserted a $501,676.96 unsecured claim

on account of "Lease, Good Sold [sic]" and "Good 'Gas + Oil" Sold (Lease) [sic]," (BBEP

Claim at 2), referenced "Vienna" and "Charlton," (*id.*), and attached numerous

documents.  The Terra Claim asserted a claim for $5,000,000, referenced "Raymond

Cooley's [Mich. Comp. Laws § 565.105] Record Chain of Title," and "Vienna 14," and

stated that the basis of the claim was the "original lease of Raymond Cooley."  (Terra

Claim at 2.)

The Debtors filed the *Omnibus Objection* on December 12, 2016 seeking to

disallow and expunge the Cooley Claims, among others, on the grounds that the Debtors

had paid all prepetition royalties due to the claimants pursuant to this Court's order

authorizing such payments, and to the extent royalty claims were to arise postpetition,

the Debtors will pay those in the ordinary course of business.  (*Omnibus Objection* at ¶

9.)  On January 4, 2017, the Debtors filed the *Declaration of Douglas Lewandowski in*

*Support of the Debtors' Fourth through Fifteenth Omnibus Claims Objections* (the

"*Lewandowski Declaration*") (ECF Doc. # 904)), attesting, in pertinent part, that the

Debtors' professionals had reviewed each of the claims listed on the *Omnibus Objection*

to confirm that they asserted claims for prepetition amounts with respect to royalty

interests that had been paid in full pursuant to this Court's order or claims for

8

postpetition amounts that had been, and would continue to be, paid in the ordinary course of business.  (*Lewandowski Declaration* at ¶¶ 4-5.)

## DISCUSSION

A bankruptcy court may disallow a claim to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1); *accord In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014).  A proof of claim filed and executed in accordance with the Federal Rules of Bankruptcy Procedure constitutes "prima facie evidence of the validity of a claim."  FED. R. BANKR. P. 3001(f).  Once an objecting party "produc[es] 'evidence equal in force to the prima facie case,'" the claim's presumptive validity is negated and the burden of proof shifts back to the claimant to establish the validity of the claim by a preponderance of the evidence.  *Residential Capital, LLC*, 518 B.R. at 731 (quoting *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013)).

Here, the Debtors have submitted evidence that they paid Cooley the royalties to which she was entitled with respect to Livingston West (which she does not dispute) and Vienna 2 and Vienna 34.  (*Debtors' Supplement* at ¶ 15; *see also Table of Debtors' Production Unit Payments to Cooley*, *Debtors' Supplement*, Ex. J (detailing royalty payments by Debtors to Cooley since November 25, 2007); *see also generally Lewandowski Declaration.*)  The Debtors have also shown that they are not responsible for the royalty payments generated from Vienna 14, have no working interest in Charlton 12, and hold only an overriding royalty interest in Elmira 14.  To satisfy her

burden of proof and defeat the *Omnibus Objection*, Cooley must come forward with proof establishing the validity of her claims by a preponderance of the evidence.

She has failed to do so.  Instead, she apparently contends, as she did in the Michigan courts, that she was Raymond's sole beneficiary, and is therefore entitled to the entire Residuary Estate, including all of the royalties (*i.e.*, the full 60% rather than only 20%) to which Raymond was entitled under the Divorce Judgment.  (*See Cooley Response* at 1 ("Claimant Cooly's, father Raymond Cooley passed on April 5, 1995, leaving a valid will, with a residuary default clause naming Dorothy Kettler a/ka Cooley, owner of his whole estate, who remain the sole named residuary devisee beneficiary of all the fee simple [record chain of title] real property that my deceased father had at the time of his passing on April 5, 1995.")

Cooley's statements to the Court confirm this understanding.  At the hearing on March 9, 2017, the following colloquy took place:

> THE COURT:  Well, I'm looking at a mineral deed, which indicates that the personal representative of your father's estate conveyed to you a one-third interest in the estate's 60 percent interest in this –
>
> MS. COOLEY:  That is true, sir.  But the problem here is, it was withheld from me that I am the residuary owner of my father's estate.  That would be a fee simple estate and I –
>
> THE COURT:  So you're saying – okay, let me just interrupt. You say you're entitled to 100 percent of the 60 percent interest?  Is that what you're saying?
>
> MS. COOLEY:  Definitely, under the terms of that will and my father's (indiscernible) rule.

(*Tr.* at 11:15-12:2.)  Cooley also appeared to confirm that she had been receiving distributions on account of the one-third interest, (*id.* at 12:3-10), and referenced her

continued efforts regarding her dispute as to the ownership interests in the relevant properties in Michigan. (*Id.* at 12:11-13:4.)

Whatever the outcome of any future litigation in Michigan, the Michigan courts have already adjudicated her rights as an heir under the Will, and have gone so far as to enjoin Cooley from seeking to re-litigate issues directly or tangentially related to the Raymond Estate and/or her inheritance.  To the extent that the Cooley Claims are based on a contention that she was Raymond's sole beneficiary, the Michigan state courts have made abundantly clear that such a contention is meritless.  She cannot relitigate her rights in this Court, s*ee generally In re Residential Capital, LLC*, 501 B.R. 624, 635, 638 (Bankr. S.D.N.Y. 2013) (citations omitted) (discussing *res judicata* and collateral estoppel), and to the extent that she claims that she was harmed by the judgments of the Michigan court and wants this Court to correct those errors, her contentions are barred by the *Rooker-Feldman* doctrine.  *See id.* at 639-40 (citations omitted) (discussing *Rooker-Feldman*).  Accordingly, the Debtors' objections to the Cooley Claims are sustained and her claims are disallowed.

Submit order.

Dated:New York, New York
          August 18, 2017

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge

11